Walter E. RYAN, Jr., and Donna Conrad, in the right of and the benefit of Maxim Integrated Products, Inc., Plaintiffs

v.

John F. GIFFORD, Fredrick G. Beck, Carl W. Jasper, Tunc Doluca, Pirooz Parvarandeh, Richard C. Hood, Vijaykumar Ullal, Charles G. Rigg, Michael J. Byrd, James R. Bergman, B. Kipling Hagopian, A.R. Frank Wazzan, Eric P. Karros, M.D. Sampels, and Alan Hale, Defendants,

and

Maxim Integrated Products, Inc., Nominal Defendant.

Civ. A. No. 2213–CC.

Court of Chancery of Delaware.

Submitted: Oct. 5, 2007.

Decided: Nov. 21, 2007.

Norman M. Monhait, of Rosenthal Monhait & Goddess, P.A., Wilmington, DE; Clinton A. Krislov and Jeffrey M. Salas, of Krislov & Associates, Ltd., Chicago, IL; Thomas G. Shapiro, Edward F. Haber, Michelle H. Blauner, and Robert E. Ditzion, of Shapiro Haber & Urmy, LLP, Boston, MA, of counsel, for Plaintiffs.

Peter J. Walsh, Jr., Timothy R. Dudderar, and Scott B. Czerwonka, of Potter Anderson & Corroon, LLP, Wilmington, DE; John M. Potter, of Quinn Emanuel Urquhart Oliver & Hedges, LLP, San Francisco, CA, of counsel, for Individual Defendants Frederick G. Beck, Alan Hale, Richard C. Hood, Pirooz Parvarandeh, Charles G. Rigg, and Vijaykumar Ullal.

Gregory P. Williams, Lisa A. Schmidt, John D. Hendershot, and Kelly E. Farnan, of Richards, Layton & Finger, P.A., Wilmington, DE; David Siegel and John C. Hueston, of Irell & Manella, LLP, Los Angeles, CA, of counsel, for Individual Defendant John F. Gifford.

Kevin G. Abrams and Nathan A. Cook, of Abrams & Laster, LLP, Wilmington, DE; Steven M. Bauer, Robert E. Sims, David M. Friedman, and Heather Thompson, of Latham & Watkins, LLP, San Francisco, CA, of counsel, for Individual Defendant Carl W. Jasper.

"J" Jackson Shrum, of Archer & Greiner, P.C., Wilmington, DE; Michael J.

Ioannou and Lita M. Verrier, of Ropers Majeski, Kohn & Bentley, San Jose, CA, of counsel, for Nominal Defendant Maxim Integrated Products, Inc.

### OPINION

CHANDLER, Chancellor.

The issue presently before me in this case is whether this Court may properly exercise personal jurisdiction over certain nonresident defendants. In deciding this issue, I consider whether a statutory basis exists for the exercise of jurisdiction, whether plaintiffs have satisfied their burden to demonstrate a factual basis for this Court's exercise of jurisdiction and, if so, whether such exercise is constitutional.

For the reasons set forth later in this Opinion, I conclude that this Court cannot exercise jurisdiction over Frederick G. Beck, Alan Hale, Richard C. Hood, Pirooz Parvarandeh, Charles G. Rigg, or Vijaykumar Ullal under 10 *Del. C.* § 3114(b). I therefore grant the motion to dismiss these defendants pursuant to Court of Chancery Rule 12(b)(2). Because I conclude that section 3114(b) does provide a proper basis for jurisdiction over Carl W. Jasper, I deny his motion to dismiss for lack of personal jurisdiction.

### I. PROCEDURAL HISTORY

Plaintiff Walter E. Ryan, Jr. filed suit on June 12, 2006 alleging that, from 1998 to 2002, current and former directors of Maxim Integrated Products, Inc. ("Maxim" or the "Company") breached their fiduciary duties by granting backdated options to former chief executive officer and chairman of the board, John F. Gifford. Defendants moved to dismiss or stay the case in favor of a consolidated action pending in a California federal court. On February 6, 2007, this Court granted defendants' motion to dismiss all claims arising before

Ryan became a Maxim shareholder and denied the motion as to all other claims. On February 16, 2007, without leave of the Court, plaintiff purported to file a first amended derivative complaint—adding a new plaintiff, new defendants, and additional claims that other directors and officers engaged in stock option backdating. Defendants quickly challenged the improper filing of this complaint. Plaintiffs then sought, and this Court granted, leave to amend the complaint. New defendants Frederick G. Beck, Alan Hale, Richard C. Hood, Pirooz Parvarandeh, Charles G. Rigg, Vijaykumar Ullal ("moving defendants") and Carl W. Jasper ("Jasper") now seek dismissal of the amended complaint for lack of personal jurisdiction.

### II. PARTIES

#### A. Moving Defendants

Plaintiffs contend, in essence, that moving defendants are subject to the jurisdiction of this Court under 10 *Del. C.* § 3114(b) because they received and held allegedly backdated options, allowed them to vest, and (in some cases) exercised these options after January 1, 2004, the operative date of section 3114(b), and because they were able to do so only by virtue of being officers of Maxim. Specifically, the first amended complaint and plaintiffs' later pleadings allege the following regarding the moving defendants, all of whom are also alleged to have personally benefitted from the purported backdated stock options, which were granted at various times between 1997 and 2002.

#### 1. Defendant Frederick G. Beck

Frederick G. Beck co-founded Maxim in 1983 and served as its vice president until the end of 2005. Beck was identified as one of the most highly compensated executive officers of Maxim in at least 2004 and 2005. Plaintiffs allege that Beck exercised

backdated stock options after January 1, 2004. Plaintiffs further allege that Beck holds unexercised backdated options that did not fully vest until after January 1, 2004.

### 2. Defendant Alan Hale

Alan Hale was executive vice president of the Company and, since January 2007, has been its interim chief financial officer. Plaintiffs identify documents, filed with the Securities Exchange Commission, on which Hale's signature appears as "Vice President and Chief Financial Officer." Plaintiffs aver that Hale holds unexercised backdated options, at least a portion of which vested after January 1, 2004.

### 3. Defendant Richard C. Hood

Richard C. Hood joined the Company in 1983 and was promoted to vice president in February 1997. Hood was named one of Maxim's most highly compensated officers in at least 2004 and 2005. Plaintiffs allege that Hood exercised backdated stock options after January 1, 2004. Plaintiffs also contend that he holds unexercised backdated options, at least a portion of which did not fully vest until after January 1, 2004.

### 4. Defendant Pirooz Parvarandeh

Pirooz Parvarandeh has been employed by Maxim since 1987. He served as vice president from 1997 to 2005 and was promoted to senior vice president in 2004 and to group president in May 2005. He was named one of the most highly compensated officers of the Company in at least 2004 and 2005. Plaintiffs aver that Parvarandeh holds unexercised backdated options, at least a portion of which fully vested after January 1, 2004.

### 5. Defendant Charles G. Rigg

Charles G. Rigg joined the Company in 1996 as managing director and general counsel. He was promoted to Maxim's vice president in 1999[1] and he remains its general counsel. Plaintiffs aver that Rigg holds unexercised backdated options, at least a portion of which fully vested after January 1, 2004.

### 6. Defendant Vijaykumar Ullal

Vijaykumar Ullal joined Maxim in 1989 and was vice president from 1996 to 2004 when he was promoted to senior vice president. Ullal was identified as one of the Company's most highly compensated executive officers in 2003. Plaintiffs allege that Ullal continues to hold unexercised backdated options, at least a portion of which did not fully vest until after January 1, 2004.

### B. Defendant Carl W. Jasper

The complaint alleges that Jasper was chief financial officer and vice president of Maxim from April 1999 until January 2007 and, at all relevant times, actively participated in the management of the Company's daily business affairs and finances. Plaintiffs also allege that Jasper has held unexercised backdated options, at least a portion of which fully vested after January 1, 2004.

Citing a later letter from Maxim to the NASDAQ Listing and Hearing Review Council that summarized conclusions made by Maxim's special investigation committee, plaintiffs charge that Jasper was directly involved with determining the dates of options grants. Specifically, the letter

---

1. Plaintiffs allege, in their complaint, that Rigg was promoted to vice president in 1999 and still holds this position. Plaintiffs later allege that he is currently Maxim's senior vice president. This discrepancy does not affect my analysis and I, therefore, need not address it.

states that "[t]he Special Committee believes, based on the evidence developed in its investigation, that Mr. Gifford and Mr. Jasper had knowledge and participated in the selection of grant dates ... from 1999 through 2005 either with hindsight or prior to the completion of the formal approval process."[2] Plaintiffs also highlight the press release in which Maxim announced that Jasper had resigned as chief financial officer of the Company "in connection with" the special committee's review of certain stock option grants and practices[3] and the Company's Form 10–K certifications, which were signed by Jasper as an attestation to his personal knowledge of the accuracy of those financial statements. Lastly, plaintiffs aver that Jasper's knowledge of the backdating options practice is evidenced by Jasper's e-mail to directors on Maxim's board, in which he describes considerations associated with changing the Company's auditor. Plaintiffs also call my attention to the deposition testimony of defendant James R. Bergman as further factual support for the exercise of personal jurisdiction over Jasper.[4]

## III. CONTENTIONS

Moving defendants and Jasper (together "defendants") filed and briefed separate motions to dismiss the claims against them for lack of personal jurisdiction pursuant to Court of Chancery Rule 12(b)(2).[5] The theories they assert detailing why the complaint should be dismissed are essentially identical, though as discussed below the result of the application of such theories is not.

Moving defendants contend that they are not subject to the jurisdiction of this Court under the nonresident officer consent to service of process statute, 10 Del. C. § 3114(b), for three reasons. First, plaintiffs do not show that any moving defendant engaged in improper conduct in his capacity as an "officer." Because none of the moving defendants were directors, were members of the compensation committee, or were alleged to have engaged in the approval or granting of the stock options, they are not within the jurisdictional reach of section 3114(b). Moving defendants distinguish between the passive holding of stock options and active misconduct in an official capacity; only the latter (they argue) triggers the application of section 3114(b). Moreover, moving defendants assert, Delaware courts have narrowly interpreted section 3114(b) so that it applies only to suits in which the source of the claim is official misconduct or wrong-

2. Pls.' Sur–Reply in Opp'n to Defs.' Mot. to Dismiss Ex. A at MXIM–DE 0132914–5.

3. *Id.* Ex. B ("The Company announced that in connection with the investigation, ... Carl Jasper, the Company's Chief Financial Officer, has resigned from the Company.").

4. Ltr. from Norman M. Monhait to the Hon. William B. Chandler III (Oct. 5, 2007) (referencing Aff. of Edward F. Haber in Support of Pls.' Mot. for Partial Summ. J. Ex. 4 at 51, 52, 60–66). Defendant Bergman, discussing a memorandum he wrote, stated that, in a conversation with Jasper in 2004, Jasper told him that "no options would be granted retroactively at a price lower than the grant date because this would require expensing the dif-

ference between the price at grant and the price of the option as a current expense." Aff. of Edward F. Haber in Support of Pls.' Mot. for Partial Summ. J. Ex. 4 at 62.

5. Plaintiffs do not appear to dispute that Delaware's long-arm statute, 10 *Del. C.* § 3104, does not provide a basis for the exercise of jurisdiction over defendants. Both the moving defendants and Jasper contend that any attempt to invoke long-arm statute jurisdiction over them would violate the Due Process Clause of the Fourteenth Amendment. Plaintiffs do not address this argument and instead confine their arguments to the constitutionality of the exercise of jurisdiction over defendants under section 3114(b).

doing. Second, because the alleged backdating occurred between October 1997 and June 2003 and section 3114(b) limits implied consent to jurisdiction to conduct in an official capacity commenced only *after* January 1, 2004, the challenged option grants cannot give rise to jurisdiction under section 3114(b). Third, certain moving defendants do not satisfy section 3114(b)'s definition of "officer." [6] Thus, moving defendants conclude, section 3114(b) does not grant jurisdiction over them. Lastly, moving defendants assert that ownership or exercise of stock options alone, as an independent basis of personal jurisdiction, is constitutionally infirm because ownership or exercise constitutes neither sufficient minimum contacts with Delaware nor reasonable notice of susceptibility to suit in Delaware. Therefore, moving defendants conclude, plaintiffs have not made a sufficient showing that personal jurisdiction over the defendants does—or constitutionally could—exist.

Defendant Jasper similarly argues that this Court lacks personal jurisdiction over him under section 3114(b) because the alleged backdating at Maxim occurred at the time of the granting of the option, which was *before* January 1, 2004, and because plaintiffs have not alleged any post-January 1, 2004 misconduct by Jasper in his official capacity. Jasper denies that plaintiffs have established by any admissible evidence that his alleged involvement in the process of granting options subjects him to jurisdiction under section 3114(b). Like moving defendants, Jasper contends that the mere receipt, holding, and vesting

of options are not official acts or continuing wrongs within the purview of section 3114(b). Jasper also states that section 3114(b) only confers jurisdiction in suits involving claims of breach of fiduciary duties, not claims of unjust enrichment.

Plaintiffs admit that they rely only on the jurisdictional basis provided by section 3114(b). They contend that the receipt, continued holding, vesting of, and (in some cases) exercise of the allegedly backdated options trigger the applicability of section 3114(b) because these actions were a result only of defendants' retaining their official capacity as officers and, therefore, these actions constitute a breach of their fiduciary duties. Plaintiffs also challenge defendants' description of the wrongdoing and contend that the grants of the allegedly backdated options themselves are "continuing wrongs" that gave rise to a cause of action against defendants when the options were fully vested. Because some of the options did not fully vest until after January 1, 2004, plaintiffs contend that the cause of action did not accrue until after January 1, 2004 and so, under section 3114(b), this Court may exercise jurisdiction over defendants. Finally, plaintiffs contend that defendants were unjustly enriched through receipt and continued holding of at least some backdated options. Plaintiffs apparently conclude that, because the receipt and retention of allegedly backdated options could support a claim for unjust enrichment, this Court has jurisdiction over defendants who so received and retained backdated stock options.

**6.** Moving defendants' contention is two-part: first, that serving as "vice president" or "president" is insufficient to invoke jurisdiction under section 3114(b); and, second, that, even if certain moving defendants were among the most highly compensated officers at any time during the course of the alleged misconduct, these individuals took no action in their official capacity as officers in the receipt of the challenged options. Because I conclude that section 3114(b) is inapplicable for other reasons, I need not address whether the appellation of "vice president" or "president" satisfies the terms of section 3114(b). I address the second point in section IV.B.3 of this opinion.

## IV. ANALYSIS

### A. Standard of Review for Motion to Dismiss for Lack of Personal Jurisdiction

■■■ When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant.[7] The court engages in a two-step analysis: the court must first determine that service of process is authorized by statute and then must determine that the exercise of jurisdiction over the nonresident defendant comports with traditional due process notions of fair play and substantial justice.[8] In ruling on a Rule 12(b)(2) motion, the court may consider the pleadings, affidavits, and any discovery of record.[9] If, as here, no evidentiary hearing has been held, plaintiffs need only make a *prima facie* showing of personal jurisdiction [10] and "the record is construed in the light most favorable to the plaintiff." [11]

### B. Statutory Basis for Exercise of Jurisdiction Over a Nonresident Defendant: 10 Del. C. § 3114

The Supreme Court of Delaware has held that 10 *Del. C.* § 3114 authorizes the exercise of jurisdiction over a nonresident defendant.[12] Section 3114(b) provides, in relevant part:

Every nonresident of this State who after January 1, 2004, accepts election or appointment as an officer of a corporation organized under the laws of this State, or who after such date serves in such capacity . . . by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation . . . as an agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such officer is a necessary or proper party, or in any action or proceeding against such officer for violation of a duty in such capacity, whether or not the person continues to serve as such officer at the time suit is commenced. Such acceptance or service as such officer shall be a signification of the consent of such officer that any process when so served shall be of the same legal force and validity as if served upon such officer within this State and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable.[13]

As a threshold matter, I begin my analysis of the application of section 3114(b) by identifying the relevant act from which consent may be implied. Section 3114(b) contemplates only whether a certain act has occurred after the date (January 1, 2004) specified in the statute. It clearly identifies this act—the "signification of the

7. *Werner v. Miller Tech. Mgmt., L.P.,* 831 A.2d 318 (Del.Ch.2003).

8. *Amaysing Techs. Corp. v. CyberAir Commc'ns., Inc.,* No. 19890–NC, 2005 WL 578972, at *3 (Del.Ch. Mar. 3, 2005). *See also Benerofe v. Cha,* No. 14614, 1996 WL 535405, at *3 (Del.Ch. Sept. 12, 1996).

9. *Cornerstone Techs., LLC v. Conrad,* No. 19712–NC, 2003 WL 1787959, at *3 (Del.Ch. Mar. 31, 2003).

10. *Benerofe,* 1996 WL 535405, at *3 (citing *Hart Holding Co. Inc. v. Drexel Burnham Lambert Inc.,* 593 A.2d 535, 538 (Del.Ch.1991)).

11. *Cornerstone Techs.,* 2003 WL 1787959, at *3 (internal citation omitted).

12. *Armstrong v. Pomerance,* 423 A.2d 174, 176–180 (1980).

13. 10 *Del. C.* § 3114(b).

consent of such officer"—as the acceptance of nomination as an officer or service in that capacity, where the acceptance or service occurs after January 1, 2004. Additional requirements both have been imputed to section 3114(b) and have arisen as a result of interpretation of its text. The enactment of section 3114(b) carried with it the interpretive "baggage" of section 3114(a), which I am bound to follow.[14] With this interpretive framework in mind, I turn to the statutory provision at hand.

### 1. Accrual of the Cause of Action under Section 3114 and the Continuing Wrong Doctrine

■ Plaintiffs contend that defendants are subject to the jurisdiction of this Court under section 3114(b) for conduct that predates January 1, 2004, because the conduct—receiving and holding allegedly backdated options—is a continuing wrong. Plaintiffs' argument is, therefore, that section 3114(b) can be used to obtain jurisdiction over nonresident officers who, after January 1, 2004, accept nomination or serve as an officer in a Delaware corporation, in actions challenging transactions or conduct that allegedly occurred before January 1, 2004, because the conduct continues beyond January 1, 2004. For plaintiffs' argument to succeed, I would have to agree that receiving and holding allegedly backdated vested options constitute one

"continuing wrong" such that, where those options were received before January 1, 2004, and are alleged to have vested after January 1, 2004, the continuing wrong doctrine would permit the application of section 3114(b). Though the date of the occurrence of the underlying challenged transaction or conduct seems, on the face of section 3114(b), irrelevant to determine whether the statute permits service of process on the nonresident officers, precedent dictates otherwise. Determination of whether the challenged transactions or conduct are actionable violations is governed by specific statutory or common law. But, for purposes of the application of section 3114(b), this Court must look to when the cause of action arising out of that allegedly wrongful conduct accrued.[15]

Here, plaintiffs challenge grants of allegedly backdated stock options. This challenge to the underlying transaction itself—the alleged act of backdating or receiving backdated stock options—will be governed by laws relating to fiduciary duties owed by directors and officers to the corporation, not by section 3114. But, because interpretation of section 3114(b) encompasses interpretation of section 3114(a), I must consider when the cause of action arising from the alleged misconduct occurred. Plaintiffs assert that the grant of allegedly backdated stock options and

---

**14.** The language of the nonresident officer implied consent statute, 10 *Del. C.* § 3114(b), mirrors that of the nonresident director implied consent statute, 10 *Del C.* § 3114(a). *See also Canadian Commercial Workers Indus. Pension Plan v. Alden,* No. 1184–N, 2006 WL 456786, at *11 n. 91 (Del.Ch. Feb. 22, 2006) ("Effective January 1, 2004, 10 *Del. C.* § 3114 was amended to bring officers of Delaware corporations within its reach. The language and holdings of the pre–2004 cases concerning Section 3114 thus now apply to officers, too.").

**15.** *Kaufman v. Albin,* 447 A.2d 761, 763 (Del. Ch.1982) ("The primary issue remaining is

whether this cause of action arose or accrued after ... the effective date of 10 *Del. C.* § 3114."). At issue in *Kaufman* was the applicability of section 3114(a). As noted, however, in *Canadian Commercial Workers Indus. Pension Plan,* interpretive decisions construing section 3114(a) are deemed to apply to section 3114(b). 2006 WL 456786, at *11 n. 91. Thus, the requirement that the cause of action accrue after the effective date of the statute, which was part of the enacting language in section 3114(a), *see Kaufman,* 447 A.2d at 763, is also applicable to a section 3114(b) inquiry.

the subsequent holding, allowing to vest, and exercising of those options constitute a continuing wrong.[16] According to plaintiffs, even though the options were granted before section 3114(b)'s effective date, because defendants held and continue to hold these options, which vested after January 1, 2004, they are subject to personal jurisdiction under section 3114(b). Plaintiffs contend that the cause of action against defendants did not arise until the options were fully vested, which did not occur until after January 1, 2004.

▮ The continuing wrong doctrine is a narrow one.[17] Against this backdrop and consistent with this Court's recent decision in *Desimone v. Barrows*[18] and with *Elster v. American Airlines*,[19] I reject plaintiffs' argument that passively receiving, holding, and allowing to vest allegedly backdated stock options constitute a continuing wrong that might satisfy the post-January 1, 2004 conduct requirement.[20] Where this is the only alleged misconduct, section 3114(b) cannot be used to obtain jurisdiction over those defendants who only and merely held allegedly backdated options and allowed them to vest. Instead, if there is a wrong, it occurs at the moment the stock option is granted. As to all

**16.** All options have not yet vested, but each defendant is alleged to hold at least some options that are currently vested.

**17.** *Desimone v. Barrows*, 924 A.2d 908, 924–25 (Del.Ch.2007) ("This court's written decisions ... do suggest that the [continuing wrong] doctrine is a narrow one that typically is applied only in unusual situations, such as where a plaintiff acquires his stock after a particular transaction has begun but before it is completed.") (citation omitted). Though plaintiff in *Desimone* argued for the application of the continuing wrong doctrine for the purposes of standing under section 327, Vice Chancellor Strine's reasoning is equally applicable in this context because the discrete issue—when the transaction of granting a backdated stock option is completed—is the same.

**18.** 924 A.2d 908, 926 (Del.Ch.2007) ("The problem for [plaintiff] is that each of the wrongs, if they be that, he claims occurred after he became a stockholder can be easily segmented from any wrongs that occurred before.").

**19.** 100 A.2d 219, 224 (Del.Ch.1953) ("The wrong or injury of which plaintiff complains is the *granting* of the options, not the exercise thereof. The *action is therefore not a continuing one.*") (emphasis added). *See also Catalano v. Trans World Airlines, Inc.,* No. 5543, 1979 WL 178566, at \*1 (Del.Ch. July 13, 1979) (suggesting, but not holding, that had defendants chosen to establish that the alleged conduct took place before the statute's effective date, 10 *Del C.* § 3114 would not be available to obtain jurisdiction over the parties); *Teachers' Ret. Sys. of La. v. Scrushy*, No. 20529, 2004 WL 423122, at \*10 (Del.Ch. Mar. 2, 2004) (noting, but not holding, that because plaintiffs sued for conduct that predated section 3114(b) "[i]t is probable ... that this court cannot exercise personal jurisdiction over these defendants"); *Monheit v. Chalk*, No. 6433, 1985 WL 11556, at \*2 (Del.Ch. Apr. 16, 1985) (stating "that the provisions of [section 3114] are not applicable to causes of action arising prior to September 1, 1977 [the effective date of section 3114(a)]", citing 61 Del. Laws, Ch. 119, §§ 2 and 4, and concluding that jurisdiction could be based on section 3114 because there were post-effective date alleged wrongs).

**20.** Plaintiffs cite *Kaufman* to support their continuing wrong doctrine argument, but *Kaufman* is readily distinguishable from the facts and issues here (at least as to moving defendants other than Beck and Hood and as to Jasper), where the alleged wrongdoing—the granting of backdated options—pre-dated section 3114(b)'s effective date and where the only post-effective date conduct was the passive holding of those options and allowing them to vest. In *Kaufman*, the Court applied the continuing wrong doctrine where, in accordance with a resolution adopted by directors permitting officers to surrender their options in connection with a tender offer that was consummated after the effective date, the cancellation was contingent on acceptance of the tender offer by a majority of the shareholders. 447 A.2d at 762.

moving defendants except Beck and Hood, plaintiffs allege only that they received, held, continue to hold, and allowed the vesting of the challenged options. Plaintiffs do not allege that these defendants engaged in any post-January 1, 2004 conduct that rises above the mere passive holding of allegedly backdated options. Rejecting plaintiffs' invocation of the continuing wrong doctrine, I therefore conclude that plaintiffs' allegations do not permit this Court to use section 3114(b) as a basis to exercise jurisdiction over any moving defendant, except Beck and Hood. As to Beck, Hood, and Jasper, however, plaintiffs allege more than just mere passive conduct. Plaintiffs allege that both Beck and Hood have exercised allegedly backdated options and that these exercises occurred after January 1, 2004. Plaintiffs aver that, among other alleged misconduct, Jasper knew of the backdating, as evidenced by an e-mail he sent to directors in January 2005, and resigned in 2007 because of his involvement in the Company's backdating practice. These allegations are sufficient to satisfy the post-January 1, 2004 conduct requirement. I now turn to whether this conduct was performed in each defendant's capacity as an officer.

## 2. When "Or" Means "And": Section 3114(b)'s Conjunctive Requirements

■ Section 3114(b) provides for personal jurisdiction over any non-resident who, after January 1, 2004, serves as an officer of a Delaware corporation

> in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such officer is a necessary or proper party, *or* in any action or proceeding against such officer for violation of a duty in such capacity, whether or not the person continues to serve as such officer at the time suit is commenced.[21]

These clauses, connected by the disjunctive rather than the conjunctive, plainly contain two distinct bases upon which to assert jurisdiction. The terms of the statute appear to be satisfied in two situations: one, if the defendant officer is a "necessary or proper party" in an action in which the corporation is a party; or two, if the action alleges a violation of the officer's duties in his capacity as an officer. In *Hana Ranch v. Lent*,[22] however, the Court interpreted section 3114(a) in a much more limited fashion. Apparently concerned, in light of the United States Supreme Court's then-recent decision in *Shaffer v. Heitner*,[23] that the first clause of this section might be overly broad and, thus, unconstitutional, then-Chancellor Marvel concluded that "the statute must be read as applying only to actions against directors as a class of persons who have been made subject to being sued in Delaware as such, being persons who could not be subjected to the jurisdiction of a Court of Delaware were they not directors."[24] This interpretation of section 3114(a) effectively rewrote the

**21.** 10 *Del. C.* § 3114(b) (emphasis added).

**22.** 424 A.2d 28 (Del.Ch.1980).

**23.** 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) (holding that Delaware's assertion of jurisdiction based solely on the statutory presence of their property in Delaware violated the due process clause of the United States Constitution).

**24.** Then–Chancellor Allen, in *In re USACafes, L.P. Litig.*, 600 A.2d 43, 53 (Del.Ch.1991), suggested a different approach with which I agree: "An alternative might have been to give the legislature's word its ordinary meaning, but to protect against unconstitutional use of the statute on a case-by-case basis— employing the test of the *International Shoe [v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] line of cases to do so."

disjunctive "or" into a conjunctive "and." The result is that the application of section 3114(a) is limited to actions against a director only for acts performed in his capacity as a director.[25]

As of the effective date of section 3114(b), the language and holdings of pre–2004 section 3114 director cases apply with equal force to officers under section 3114(b).[26] This restrictive interpretation is also applicable to suits against nonresident officers under section 3114(b) and I am duty bound to follow the law as it is currently interpreted unless and until the Supreme Court of Delaware holds otherwise. Therefore, I must determine whether plaintiffs allege facts to support breaches of the fiduciary duties owed by these defendants to Maxim. Because I concluded earlier that receiving and holding allegedly backdated options and allowing them to vest does not constitute a continuing wrong, I need only to determine whether, as to Beck, Hood, and Jasper, plaintiffs have sufficiently alleged conduct or acts performed in their official capacities to enable this Court to exercise jurisdiction over them.

### a. Defendants Beck and Hood

■ The fiduciary duties an officer owes to the corporation "have been assumed to be identical to those of directors."[27] For section 3114(b) to provide a basis of jurisdiction, plaintiffs must allege facts to support a violation of an officer's duty to the corporation. As to Beck and Hood, plaintiffs have failed to do so. Plaintiffs allege that both Beck and Hood exercised allegedly backdated options after the effective date of section 3114(b) and contend that, therefore, this Court may exercise jurisdiction over them pursuant to section 3114(b).

Maxim's shareholder-approved stock option plans empowered the Maxim board of directors to grant options to reward and create an incentive for performance that resulted in an increase in Maxim's stock price. According to the first amended complaint, between 1997 and 2003, the directors of Maxim abused this power to grant backdated options. No allegations suggest that either Beck or Hood participated in granting the options or selecting the grant dates.[28] Plaintiffs do not aver

---

**25.** *Hana Ranch v. Lent*, 424 A.2d 28, 30–31 (Del.Ch.1980) ("[*Armstrong v. Pomerance*, 423 A.2d 174 (Del.1980)], in my opinion, supports a construction of 10 Del. C. § 3114 which limits its application only to those actions directed against a director of a Delaware corporation for acts on his part performed only in his capacity as a director.") (interpreting section 3114(a)); *see also N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, No. 1456–N, 2006 WL 2588971, at *6 (Del. Ch. Sept. 1, 2006) ("Further narrowing the scope of Section 3114, 'Delaware cases have consistently interpreted [early cases construing the section] as establishing that [it] ... appl[ies] only in connection with suits involving the statutory and nonstatutory fiduciary duties of nonresident directors.' ") (citing *Canadian Commercial Workers Indus. Pension Plan*, 2006 WL 456786, at *11 (alterations in original) (quoting DONALD J. WOLFE, JR. & MICHAEL A. PITTENGER, CORPORATE AND COMMERCIAL PRACTICE IN THE DELAWARE COURT OF CHANCERY

§§ 3–5[a] (2005))), *af'd*, 930 A.2d 92 (Del. 2007).

**26.** *Canadian Commercial Workers Indus. Pension Plan*, 2006 WL 456786, at *11 n. 91.

**27.** *In re Walt Disney Co.*, No. 15452, 2004 WL 2050138, at *3 (Del.Ch. Sept. 10, 2004) (citation omitted). *See also* Lyman Johnson, *Recalling Why Corporate Officers are Fiduciaries*, 46 WM. & MARY L. REV. 1597 (2005).

**28.** Plaintiffs allege that, under the 1983 and 1999 stock option plans, "the stock option exercise price 'is determined by the Board according to the terms of the plan.' Thus, as members of the Board, each of the Defendants authorized and enabled Maxim to backdate stock options issued to Defendants and others." Pls.' First Am. Compl. ¶ 241. Plaintiffs do not, however, allege that either Beck or Hood were members of Maxim's board of

that Beck or Hood were even aware that the exercised options were backdated such that a compelling allegation could be articulated that they, "in conscious abrogation of their fiduciary duties, permitted [the practice of backdating] to occur repeatedly over the years." [29] Instead, plaintiffs argue that Beck and Hood were able to hold options, allow them to vest, and exercise the options only because they were officers of Maxim and that this conduct alone is, in itself, a breach of their fiduciary duties. I am not persuaded by this argument. First, merely holding and allowing options to vest is unrelated to the duties an officer owes to the corporation; it is instead merely incidental to employment with a corporation and the compensation or incentive structure the corporation utilizes. That Beck and Hood would not be able to continue to hold options and allow them to vest were they not officers of Maxim [30] is, here, not determinative of whether that conduct is in their capacity as officers—as fiduciaries to Maxim—and not just as an employee. [31] Furthermore, I conclude that the exercise of allegedly backdated options without any additional allegation of knowl-

edge that the options were wrongfully granted is not a breach of fiduciary duty. [32] To conclude otherwise would be akin to holding an officer liable for depositing a check fraudulently issued to him by the company when the officer has no knowledge of and did not participate in the wrongful issuance. Although the allegation of exercising backdated options after January 1, 2004, is sufficient to satisfy one requirement of section 3114(b), plaintiffs fail to establish *prima facie* evidence that Beck or Hood violated duties owed in their capacity as officers and, therefore, Beck and Hood cannot be subject to personal jurisdiction pursuant to section 3114(b). [33]

### b. Defendant Jasper

In this Court's recent involvement with challenges arising from backdating and spring-loading stock option practices, it has become clear that the facts may be new and the distinctions fine, but the question at the heart of all such challenges remains the same: has a fiduciary failed to meet the demanding standards that Delaware law imposes on him—the highest degree of loyalty, care, and good faith for the

---

directors. *See id.* ¶ 1 (naming Beck and Hood as "officers and former officers" and listing other defendants as members and former members of the board of directors). Plaintiffs instead allege that Beck and Hood "through abdication of duty[,] permitted" the backdating to occur. *Id.*

29. *Id.* ¶ 234.

30. Plaintiffs aver that, if an officer of Maxim ended his employment with Maxim, then, under Maxim's option plan, his options would terminate within ninety days. Pls.' Omnibus Answering Br. in Opp'n to Rule 12(b)(2) Mot. to Dismiss.

31. Options were also granted to non-officer employees of Maxim. *See* Pls.' First Am. Compl. ¶ 224.

32. If it were alleged that an officer or director, who possessed knowledge that the

options were granted in violation of a shareholder-approved plan, exercised the backdated options, I am not convinced that this would not constitute a violation of the duties the officer or director owes to the corporation in his capacity as an officer or director. Such an allegation might be sufficient to confer jurisdiction under section 3114. Those facts, however, are not before me and so that question will be answered another day.

33. If through discovery plaintiffs learn that Beck or Hood actually participated in backdating options or selecting grant dates or if they possessed knowledge that the options were backdated at the time they exercised the options, plaintiffs have at their disposal a process by which they may seek to amend their complaint.

sole benefit of the shareholders? If plaintiffs have demonstrated this, then section 3114(b) authorizes this Court to exert its jurisdictional power over Jasper.

 As then-Chancellor Allen once observed: "A director does breach his duty of loyalty if he knows that the company has been defrauded and does not report what he knows to the board or to an appropriate committee of the board, at the very least when he is involved in the fraud and keeps silent in order to escape detection." [34] I recently determined that, from a board's attempt to conceal the true nature of a grant of stock options, it may reasonably be inferred that the granting of those options was inconsistent with the duty of loyalty. [35] In this case, I earlier concluded that a director acts disloyally by approving backdated stock options with knowledge that the grants are in contravention of a shareholder-approved stock option plan. [36] I am here presented with facts and circumstances, taken in the light most favorable to plaintiffs, from which a reasonable inference may be drawn that Jasper engaged in deceptive conduct to conceal the backdating practice and that such deception is not consistent with the duty of loyalty he owed to Maxim's shareholders.

Plaintiffs allege that, from April 1999 to January 2007, Jasper was chief financial officer and vice president of Maxim. [37] Plaintiffs aver that, at all relevant times, Jasper actively participated in the management of the Company's daily business affairs and finances. Subsequent discovery, plaintiffs contend, supports their allegation that Jasper breached his duties as an officer of Maxim. [38]

Taking the pleaded facts and allegations in a light most favorable to plaintiffs, from Jasper's active participation in the management of Maxim's daily business affairs and finances, I think it reasonable to infer that Jasper at least knew of the alleged backdating, if not actually participated in the practice. On January 31, 2007, Maxim

---

**34.** *Hoover Indus., Inc. v. Chase,* 1988 WL 73758, at *2 (Del.Ch. July 13, 1988).

**35.** *In re Tyson Foods, Inc.,* 2007 WL 2351071, at *4 (analyzing allegedly spring-loaded stock options).

**36.** *Ryan v. Gifford,* 918 A.2d 341, 355 (Del.Ch. 2007) ("A director who approves the backdating of options faces at the very *least* a substantial likelihood of liability, if only because it is difficult to conceive of a context in which a director may simultaneously lie to his shareholders (regarding his violations of a shareholder-approved plan, no less) and yet satisfy his duty of loyalty.") (emphasis in original).

**37.** This allegation is sufficient to satisfy section 3114(b)'s "officer" requirement. As used in this section, "officer" means:

an officer of the corporation who (i) is or was the president, chief executive officer, chief operating officer, *chief financial officer,* chief legal officer, controller, treasurer or chief accounting officer of the corporation at any time during the course of conduct alleged in the action or proceeding to be wrongful, (ii) is or was identified in the corporation's public filings with the United States Securities and Exchange Commission because such person is or was 1 of the most highly compensated executive officers of the corporation at any time during the course of conduct alleged in the action or proceeding to be wrongful, or (iii) has, by written agreement with the corporation, consented to be identified as an officer for purposes of this section.

10 *Del. C.* § 3114(b) (emphasis added).

**38.** Defendants dispute the admissibility of the letter from Maxim to the NASDAQ Listing and Hearing Review Council that summarized conclusions made by Maxim's special investigation committee. Sufficient support exists for plaintiffs' allegation that Jasper violated his fiduciary duty without relying on this letter. I therefore need not rule on any purported evidentiary infirmity of the letter in deciding this motion.

issued a press release announcing the results of its board's special committee's investigation into certain stock option grants and practices.[39] The committee determined that, between mid–1995 and 2002, there were "deficiencies" in the stock option granting process and "specifically, that in certain instances from the beginning of fiscal year 2000 until the end of fiscal year 2006, the recorded exercise price of stock option grants ... differed from the fair market value of the underlying shares on the actual measurement days." [40] Perhaps not coincidentally, in the same press release, Maxim announced that Jasper had resigned as chief financial officer. During this same period of time, in January 2005, Jasper sent a confidential e-mail to five directors regarding changing accounting firms and his desire to avoid a restatement resulting from disagreement with Maxim's accounting policies.[41] Certainly this e-mail could indicate nothing more than the performance of due diligence. Yet, taken together, all these allegations might suggest that, not only did Jasper know of the backdating, but he also kept silent and concealed his knowledge in order to escape detection.[42] The wrong with which Jasper may be charged, therefore, is not his role in the granting of the options themselves, but instead his participation in the subsequent concealment of this practice from Maxim's shareholders. This deception is disloyal conduct in breach of his duty as a fiduciary.

I do not conclude that Jasper has, in fact, engaged in deceptive practices and disloyal conduct. Instead, in ruling on this motion (and in the absence of an evidentiary hearing), I must only determine whether plaintiffs have made a *prima facie* showing of personal jurisdiction. In making this determination, I construe the facts in a light most favorable to plaintiffs. Jasper will have ample opportunity to rebut these allegations at a later time. Drawing reasonable inferences from plaintiffs' allegations, however, I conclude that Jasper, a now-former officer of Maxim, is alleged to have engaged in post-January 1, 2004 conduct that is in violation of his fiduciary duties. I, therefore, further conclude that section 3114(b) provides a statutory basis for the exercise of this Court's jurisdiction over him.

### C. Constitutionality of Exercise of Jurisdiction over Nonresident Defendant

 Having determined that section 3114(b) authorizes jurisdiction over Jasper, I must now analyze whether Jasper had minimum contacts with Delaware such that this Court's exercise of jurisdiction satisfies due process. The familiar test articulated in *International Shoe v. Washington*,[43] as refined by its progeny, requires "minimum contacts" with the forum such that the exercise of jurisdiction over a nonresident defendant comports with the traditional notions of fair play and sub-

---

39. Pls.' Sur–Reply in Opp'n to Defs.' Mot. to Dismiss Ex. B.

40. *Id.*

41. *Id.* Ex. D.

42. Though Jasper told a Maxim director in 2004 that "no options would be granted retroactively," Ltr. from Norman M. Monhait to the Hon. William B. Chandler III (Oct. 5, 2007) (referencing Aff. of Edward F. Haber in

Support of Pls.' Mot. for Partial Summ. J. Ex. 4 at 51, 52, 60–66), the conclusions of the special committee's review indicate otherwise. This might mean either that Jasper, the chief financial officer, was unaware of the backdating or that he was attempting to conceal the practice.

43. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

stantial justice.[44] It almost goes without any further elaboration that, as chief financial officer of a Delaware corporation, Jasper availed himself of Delaware law such that he should reasonably anticipate being haled into Delaware's courts. For example, Delaware law provides specific protections for officers.[45] Without belaboring the point, I conclude that the assertion of jurisdiction here, which is based on Jasper's status as a corporate fiduciary, coupled with the narrow reading of section 3114 that has been adopted by the courts, readily satisfies due process.

### D. Other Basis for Exercise of Jurisdiction Over Nonresident Defendant: Unjust Enrichment

 Plaintiffs' final argument, which appears to request that this Court exercise jurisdiction over defendants because defendants have been unjustly enriched, is not well taken. Plaintiffs, purportedly re-

lying on this Court's February 6, 2007 opinion in this case,[46] contend that, because the moving defendants and Jasper hold allegedly backdated stock options, they are subject to this Court's personal jurisdiction "in a case seeking to remedy this wrong." [47] Though plaintiffs accurately state that this Court concluded that the receipt and holding of allegedly backdated options can support a claim for unjust enrichment, plaintiffs misunderstand unjust enrichment to be a basis for the assertion of personal jurisdiction. Instead, unjust enrichment is a claim for relief that goes to the equitable jurisdiction of this Court and does not affect the Court's power to exercise personal jurisdiction over nonresident defendants. Plaintiffs may not merely allege unjust enrichment without articulating a proper basis upon which this Court could exercise jurisdiction over moving defendants or Jasper.[48]

---

44. *See, e.g., id.* at 316, 66 S.Ct. 154; *see also Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Burnham v. Superior Court,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

45. *See, e.g.,* 10 *Del. C.* § 145 (providing indemnification to officers).

46. Pls.' Omnibus Answering Br. In Opp'n to Rule 12(b)(2) Mot. to Dismiss at 14. ("Finally, and most importantly, Moving Defendants' arguments ignore the clear language of this Court's February 6, 2007 opinion in this case ... [T]his Court held that the mere receipt and holding of back-dated options can constitute unjust enrichment....").

47. *Id.*

48. As defendants note, the crux of plaintiffs' argument is that nonresident defendants are subject to the jurisdiction of this Court because they received and hold allegedly backdated stock options from a Delaware corporation. Defendants contend that this argument fails because it does not support the application of section 3114(b). Moreover, defendants

assert, if this Court were to exercise personal jurisdiction based on the mere ownership of stock options, this exercise would violate the Due Process Clause of the Fourteenth Amendment. Based on *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977) and *Burnham v. Superior Court,* 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990), it is clear that jurisdiction obtained through the attachment of property completely unrelated to the underlying claim is unconstitutional. The *Shaffer* Court further concluded that "all assertions of state court jurisdiction must be evaluated according to the standards set forth in *International Shoe [v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)] and its progeny." 433 U.S. at 212, 97 S.Ct. 2569. It seems to me that, in certain circumstances, true *in rem* jurisdiction may constitutionally be obtained over a nonresident defendant pursuant to 8 *Del. C.* § 169, with process served pursuant to 10 *Del. C.* § 365, for the limited purpose of determining true ownership and disposition of that property. Where the underlying cause of action is directly related to the property and seeks to establish the parties' right to the underlying property, a defendant would not be subject to personal liability based on *in rem* jurisdiction, but in-

## V. CONCLUSION

For all the reasons set forth above, I conclude that section 3114(b) does not provide a basis for this Court to exercise personal jurisdiction over the moving defendants and, therefore, I grant the moving defendants' motion to dismiss pursuant to Rule 12(b)(2). As to Jasper, however, I conclude that plaintiffs have made a *prima facie* showing that section 3114(b) enables this Court to exercise personal jurisdiction over him. In addition, I conclude that such exercise of jurisdiction does not offend due process. Jasper's motion to dismiss for lack of personal jurisdiction is denied.

IT IS SO ORDERED.

stead would be subject to the jurisdiction of the court only to the extent necessary to determine the defendant's interest in the property. The constitutionality of this, of course, would depend on whether there exist other ties such that the exercise of this jurisdiction comports with the traditional notions of fair play and substantial justice required by *International Shoe* and its progeny. In *Shaffer*, the Court observed that the presence of property in a state alone is insufficient to support an exercise of jurisdiction; but clearly stated that the presence of the defendant's property suggests the existence of other ties among the defendant, the state, and the litigation. 433 U.S. at 208, 97 S.Ct. 2569 ("For example, when claims to the property itself are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction."). In *Istituto Bancario Italiano SpA v. Hunter Engineering Co.*, the Supreme Court of Delaware, though failing to rule on the issue, expressed deep concern that the statutory situs of stock in Delaware provided the necessary minimum contacts by the defendant record owner with the state, notwithstanding the fact that the stock was the subject matter of the suit. 449 A.2d 210, 222 (Del.1982). It seems to me, however, that in limited circumstances, *in rem* jurisdiction may exist where the *res* itself is, as *Shaffer* suggested, the source of the controversy. Such an argument, however, has not been presented to this Court, though I suspect plaintiffs' unjust enrichment argument may have been an attempt to invoke *in rem* jurisdiction.