# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BMB-FJ, LLC,             )
                               )
     Plaintiff,           )
                               )
       v.             )
                               )    C.A. No. N25C-03-188 CLS
FRONTIER JUSTICE, LLC,    )
ROOTED PURSUITS, LLC,    )
AMBASSADOR ENTERPRISES,  )
LLC, and JEREMY GAYED     )
                               )
     Defendant.       )
                               )
                               )

Date Submitted: August 25, 2025
Date Decided: October 24, 2025

## **ORDER**

Upon Defendant Ambassador Enterprises, LLC's Motion to Dismiss,[1] Defendants Rooted Pursuits, LLC's and Jeremy Gayed's Motion to Dismiss,[2] and Plaintiff's Responses to each,[3] it appears to the Court that:

1. On March 13, 2025, BMB-FJ, LLC ("Plaintiff") filed a Complaint asserting a claim for tortious interference with contract against Ambassador Enterprises, LLC

---

[1] *See generally* Defendant Ambassador Enterprises, LLC's Motion to Dismiss, D.I. 11 ("Ambassador MTD").

[2] *See generally* Defendant Defendants Rooted Pursuits, LLC's and Jeremy Gayed's Motion to Dismiss, D.I. 12 ("Rooted Pursuits MTD").

[3] *See generally* Plaintiff BMB-FJ, LLC's Response to Defendant Ambassador Enterprises, LLC's Motion to Dismiss, D.I. 18 ("Resp. to Ambassador MTD"); Plaintiff BMB-FJ, LLC's Response to Defendants Rooted Pursuits, LLC's and Jeremy Gayed's Motion to Dismiss, D.I. 19 ("Resp. to Rooted Pursuits MTD").

("Ambassador"), Rooted Pursuits, LLC ("Rooted Pursuits"), and Jeremy Gayed (collectively, "Indiana Defendants").[4] Plaintiff's grievance against the Indiana Defendants stem from a breach of contract claim against Frontier Justice, LLC ("Frontier").

2. Plaintiff and Frontier executed an asset purchase agreement (the "Purchase Agreement").[5] Section 5.02(d) of the Purchase Agreement integrated an Escrow Agreement. Based on the terms of the Escrow Agreement, Plaintiff alleges that Frontier wrongfully withheld the escrow funds and that the Indiana Defendants intentionally prevented Frontier from releasing the Escrow Funds.[6]

3. Mr. Gayed signed the purchase agreement on behalf of Frontier and is the sole manager and member of Rooted Pursuits.[7] Mr. Gayed did not sign the Purchase Agreement in an individual capacity.

4. The Complaint asserts that Ambassador negotiated the Purchase Agreement on behalf of Frontier.[8]

5. Section 9.01 of the Purchase Agreement required, "[a]ll notices, requests, demands and other communications" to "Purchasers" be delivered to Rooted Pursuits, LLC "[w]ith copies to" Ambassador. Rooted Pursuits is alleged to be an

---

[4] *See* Complaint, at ¶¶ 58–76, D.I. 1 ("Compl.").
[5] *Id.* at ¶ 8.
[6] *Id.* at ¶ 52–76.
[7] *Id.* at ¶ 9, 17.
[8] *Id.* at ¶ 10.

investment Partner of Ambassador.[9] The Indiana Defendants are not alleged to be a party to the Purchase Agreement and did not sign the Purchase Agreement.

6. Ambassador and Rooted Pursuits are Indiana limited liability companies.[10] Mr. Gayed resides in Indiana.[11] The Complaint claims that this Court has jurisdiction over the Indiana Defendants "[b]ecause the Escrow Agreement at issue contains a provision stating that the parties consent to . . . exclusive jurisdiction and venue" in the courts of the State of Delaware.[12]

7. On June 25, 2025, Ambassador filed a motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction under Superior Court Civil Rule 12(b)(2).[13] Ambassador concedes that it is "affiliated" with the transaction and parties, but argues that is not enough to show that the Court has jurisdiction over it because it was not a party to the Escrow Agreement, is not a resident of Delaware, and is not subject to Delaware's long-arm statute.[14] Alternatively, Ambassador proffers that Plaintiff fails to state a claim for tortious interference with contract under Rule 12(b)(6).[15]

---

[9] Compl. at ¶ 12.
[10] *Id.* at ¶ 4.
[11] *Id.* at ¶ 5.
[12] *Id.* at ¶ 6.
[13] Ambassador MTD at 1.
[14] *Id.* at 1, 2–3; 10 *Del. C.* § 3104(c)(3).
[15] Ambassador MTD at 1.

8. On the same day, Defendants Rooted Pursuits and Mr. Gayed similarly filed a motion to dismiss Plaintiff's Complaint under Rule 12(b)(2) for lack of personal jurisdiction.[16] Rooted Pursuits and Mr. Gayed also argue that participation in the negotiations of the Purchase Agreement is insufficient to establish personal jurisdiction.[17]

9. In both of its responses, Plaintiff only relies on the forum selection clause in the Escrow Agreement to establish personal jurisdiction over the Indiana Defendants.[18] Even though the Indiana Defendants are non-signatory parties, Plaintiff asserts that the forum selection clause is enforceable against them under the doctrine of equitable estoppel.[19]

10. On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of showing a basis for the trial court's exercise of jurisdiction over the nonresident defendant."[20] "At the pleading stage, the plaintiff need only 'make a prima facie showing' that the Court has jurisdiction over the nonresident defendant.[21] "In making its determination, the Court must accept all . .

---

[16] Rooted Pursuits MTD at 3.
[17] *Id.*
[18] Resp. to Ambassador MTD at 2; Resp. to Rooted Pursuits MTD at 2.
[19] Resp. to Ambassador MTD at 2; Resp. to Rooted Pursuits MTD at 3–4.
[20] *Chumash Cap. Invs., LLC v. Grand Mesa Partners, LLC*, 2024 WL 1554184, at *6 (Del. Super. Apr. 10, 2024) (quoting *Taylor v. Killen*, 2023 WL 7490068, at *3 (Del. Super. Nov. 13, 2023)) (internal quotation marks omitted).
[21] *Chumash Cap. Invs., LLC*, 2024 WL 1554184, at *6 (quoting *Taylor*, 2023 WL 7490068, at *3).

. factual allegations as true, unless contradicted by affidavit, and draw all reasonable inferences in favor of the plaintiff."[22]  The Court "may consider the pleadings, affidavits, and any discovery of record."[23]

11.  "A non-signatory party can be bound to a contract's forum selection clause under the doctrine of equitable estoppel."[24]  To determine whether a non-signatory party can be bound to a contract's forum selection clause under the doctrine of equitable estoppel the Court must ask three questions:  "First, is the forum selection clause valid?  Second, are the defendants third-party beneficiaries, or closely related to, the contract?  Third, does the claim arise from their standing relating to the merger agreement?"[25]  The answer must be yes to all three questions to bind the non-signatory party.[26]

12.  Neither party challenges the validity of the forum selection clause in the Purchase Agreement nor that Plaintiff's claim arises from the Indiana Defendants' involvement in negotiating the conditions of the Escrow Agreement.  Moreover, Plaintiff does not argue that the Indiana Defendants are third-party beneficiaries.

---

[22] *Taylor*, 2023 WL 7490068, at *3 (citations omitted).
[23] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *5 (Del. Super. July 14, 2008) (citing *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).
[24] *Chumash Cap. Invs., LLC*, 2024 WL 1554184, at *7 (citing *CFGI, LLC v. Common C Holdings LP*, 2024 WL 325567, at *8 (Del. Super. Jan. 29, 2024)).
[25] *Capital Group Cos. V. Armour*, 2004 WL 2521295, at *5 (Del. Ch. Oct. 29, 2004);  *see also Sustainability Partners LLC v. Jacobs*, 2020 WL 3119034, at *5 (Del. Ch. June 11, 2020).
[26] *Sustainability Partners LLC*, 2020 WL 3119034, at *5.

Consequently, the key issue is whether the Indiana Defendants are closely related to the Purchase Agreement.

13. The concept of "closely related" is a way to "expand[] the availability of the equitable estoppel doctrine to encompass parties who would not technically meet the definition of third-party beneficiaries.[27] A party "is closely related to a contract under Delaware law only if it 'receives a direct benefit' from the contract or if 'it was foreseeable' that the entity would be bound by the contract."[28]

14. Plaintiff argues that by "actively planning and negotiating the terms of the agreements and directing the parties to provide [the Indiana Defendants] with notice of any requests, demands, or other communications" under the Purchase Agreement, the Indiana Defendants "could reasonably expect to be bound by the agreement."[29] Hence, the standalone basis for Plaintiff's reasoning is the foreseeability inquiry of the closely related concept—there are no allegations that the Indiana Defendants received a direct benefit from the transaction.

15. Generally, the foreseeability inquiry, on a "standalone basis,"[30] is only applied in two scenarios:

> (1) when non-signatory *defendants* sought to enforce a forum selection clause, and the signatory *plaintiffs* sought to avoid it by arguing the

---

[27] *iModules Software, Inc. v. Essenza Software, Inc.*, 2017 WL 6596880, at *2 (Del. Ch. Dec. 22, 2017).

[28] *Chumash Cap. Invs., LLC*, 2024 WL 1554184, at *8 (citing *Sustainability Partners LLC*, 2020 WL 3119034, at *6).

[29] Resp. to Ambassador MTD at 3;  *see also* Resp. to Rooted Pursuits MTD at 3–4.

[30] *Neurvana Medical, LLC v. Balt USA, LLC*, 2019 WL 4464268, at *5 (Del. Ch. Sept. 18, 2019).

non-signatory defendants lacked standing under the contract; and (2) when a controlled entity is subject to a forum selection clause agreed to by its controller and the controlled entity bears a "clear and significant connection to the subject matter of the agreement."[31]

Under Delaware law, the foreseeability inquiry is "narrowly constrained to these two contexts" to prevent parties from being subjected to a forum selection clause they did not agree to or benefit from.[32]

16. Plaintiff attempts to invoke the "active involvement"[33] theory articulated by the District Court of Delaware in *CompuCom Systems, Incorporated v. Getronics Finance Holdings B.V.*[34] The *CompuCom* Court concluded that the non-signatory party, as the parent company of the subsidiaries being sold to the plaintiff, was closely related to the purchase agreement because it was the "driving force behind the transaction at issue and actively participated in all facets as such."[35] The Court first found that a notice provision directing all communication to the non-signatory defendant in addition to the record highlighting its active role in the transaction constituted a direct benefit.[36] "*Most significantly*," the non-signatory's participation in a purchase price adjustment arbitration instead of the sellers made it foreseeable that it would be bound by the forum selection clause.[37]

---

[31] *Sustainability Partners LLC*, 2020 WL 3119034, at *7 (citations omitted).
[32] *Id.*
[33] *Neurvana Medical, LLC*, 2019 WL 4464268, at *7.
[34] 2012 WL 4963308, at *4 (D. Del. Oct. 16, 2012).
[35] *Id.* at *1, *4.
[36] *Id.* at *2–3.
[37] *Id.* at *3–4. (emphasis added).

17. However, in *Neurvana Medical, LLC*, the Court of Chancery expressly rejected the "active involvement" approach to the foreseeability inquiry when applied on a standalone basis.[38] Given that the foreseeability inquiry is Plaintiff's standalone basis for binding the Indiana Defendants to the Purchase Agreement as non-signatories and non-parties to the agreement, the Court declines to apply *CompuCom* in the instant case.

18. Even if the Court found the active involvement theory applicable, the facts here are distinguishable from *CompuCom*. Unlike the defendant in *CompuCom*, the Indiana Defendants are not controlled by, nor control, Frontier—all parties are separate entities and Mr. Gayed did not participate in an individual capacity; the Indiana Defendants did not invoke provisions of the Purchase Agreement; and there is no "meaningful indication"[39] that the Indiana Defendants were so involved in the negotiation and planning of the deal that they resembled any sort of "driving force."[40]

19. Accordingly, the Court finds that the Indiana Defendants are not closely related to the Purchase Agreement. The facts do not satisfy either foreseeability scenario mentioned above. *Plaintiff*, as a signatory, is seeking to enforce the Escrow

---

[38] *Neurvana Medical, LLC*, 2019 WL 4464268, at *8.
[39] *Id.*
[40] *CompuCom*, 2012 WL 4963308, at *4.

Agreement's forum selection clause *against a non-signatory defendant*—not the other way around. Second, as mentioned above, the Indiana Defendants are separate entities from Frontier. In sum, the Indiana Defendants could not reasonably expect to be haled to court in the State of Delaware based on the facts here.

20. Because the Indiana Defendants are not closely related to the Purchase Agreement, it cannot be bound by the forum selection clause in the Escrow Agreement. Consequently, the Court lacks personal jurisdiction over the Indiana Defendants.

21. Having found that the Court lacks personal jurisdiction over Ambassador, its motion to dismiss under Rule 12(b)(6) for failure to state a claim is moot.

22. In conclusion, for the foregoing reasons, Defendant Ambassador Enterprises LLC's motion to dismiss and Defendants Rooted Pursuits, LLC's and Jeremy Gayed's motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

*/s/ Calvin Scott*
Judge Calvin L. Scott, Jr.