# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| DEUTSCHE BANK AG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 2017-0822-SG |
| | ) |
| DEVON PARK BIOVENTURES, L.P., | ) |
| DEVON PARK ASSOCIATES, L.P., | ) |
| SEBASTIAN HOLDINGS, INC., and | ) |
| UNIVERSAL LOGISTIC MATTERS, | ) |
| S.A., | ) |
| | ) |
| Defendants. | ) |
| | ) |
| | ) |
| DEVON PARK BIOVENTURES, L.P., | ) |
| | ) |
| Counterclaim Plaintiff | ) |
| | ) |
| v. | ) |
| | ) |
| DEUTSCHE BANK AG, | ) |
| | ) |
| Counterclaim | ) |
| Defendant | ) |
| | ) |
| and | ) |
| | ) |
| SEBASTIAN HOLDINGS, INC. and | ) |
| UNIVERSAL LOGISTIC MATTERS, | ) |
| S.A., | ) |
| | ) |
| Crossclaim | ) |
| Defendants | ) |

Date Submitted: February 22, 2021
Date Decided: June 30, 2021

Stephen C. Norman and Aaron R. Sims, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; OF COUNSEL: David G. Januszewski and Sheila C. Ramesh, of CAHILL GORDON & REINDEL LLP, New York, New York, *Attorneys for Plaintiff and Counterclaim Defendant Deutsche Bank AG.*

James M. Yoch, Jr. and Kevin P. Rickert, of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware; OF COUNSEL: Kevin C. Maclay, Todd E. Phillips, Quincy M. Crawford, and Nathaniel R. Miller, of CAPLIN & DRYSDALE, CHARTERED, Washington, DC, *Attorneys for Defendant, Counterclaim Plaintiff, and Crossclaim Plaintiff Devon Park Bioventures, L.P. and Defendant Devon Park Associates, L.P.*

William M. Kelleher and Phillip A. Giordano, of GORDON FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware; OF COUNSEL: Ira S. Zaroff and Richard M. Zaroff, of ZAROFF & ZAROFF LLP, Garden City, New York, *Attorneys for Defendant Sebastian Holdings, Inc.*

P. Clarkson Collins, Jr., K. Tyler O'Connell, Albert J. Carroll, R. Eric Hacker, and Damon B. Ferrara, of MORRIS JAMES LLP, Wilmington, Delaware; OF COUNSEL: Ira S. Zaroff and Richard M. Zaroff, of ZAROFF & ZAROFF LLP, Garden City, New York, *Attorneys for Defendant CPR Management, S.A., f.k.a. Universal Logistic Matters, S.A.*

**GLASSCOCK, Vice Chancellor**

This matter will no doubt strike the reader as complex, as it did this judge, with its flurry of entities and previous litigations. The allegations of the complaint, at heart, are simple, however. Defendant Sebastian Holdings, Inc. ("Sebastian"), a citizen of the Turks and Caicos, via a series of improvident margin trades became a delinquent debtor of Plaintiff and Counterclaim Defendant Deutsche Bank AG ("Deutsche"). Deutsche reduced this debt to a judgment in an English court in 2013, comprising at present, with interest, about $300 million. If it is a truism that obtaining a judgment is but half the battle, this matter is proof. Deutsche has spent the last several years trying to collect.

At the time of the judgment, Sebastian's assets included an ownership interest in Defendant Devon Park Bioventures, L.P. ("Devon LP"), a Delaware limited partnership with its principal office in Pennsylvania. Shortly after Deutsche obtained a judgment against it, Sebastian purported to assign its interest in Devon LP (the "Devon Interest") to Defendant Universal Logistic Matters, S.A., now known as CPR Management, S.A. (the "Transferee Entity"), a citizen of Panama. The Plaintiff alleges that this transfer was a sham to defeat recovery of its judgment. It notes that Sebastian's sole owner and director is non-party Alexander Vik ("Vik Jr."), a Norwegian national, while the Transferee Entity is allegedly controlled by Vik Jr.'s father, Erik Vik ("Vik Sr."). They also point to the timing of the Transferee

1

Entity's name change, in 2014, as indicative of a scheme to shield assets from judgment.

Deutsche has attempted litigation to set aside the above transfer, and a previous transfer to another entity, in several jurisdictions. In addition to the limited partnership interest itself, Devon LP's general partner, Defendant Devon Park Associates, L.P. ("Devon GP" and, together with Devon LP, "the Devon Entities") has withheld distributions owed to the rightful owner of the Devon Interest. Deutsche's litigation efforts to levy have been fruitless thus far, as described below. In this action, they seek, *inter alia*, a declaration that Sebastian remains the owner of the Devon Interest, and that they are entitled to levy thereon in aid of collecting the $300 million judgment resulting from the underlying English litigation. The Devon Entities are agnostic—they seek to interplead the distributions.

Before me are the motions of Sebastian and the Transferee Entity, seeking dismissal under Court of Chancery Rule 12(b)(2). As a Turks and Caicos entity and a Panamanian entity,[1] respectively, they allege that this Court lacks personal jurisdiction over them. I conclude below that the only substantial action these

---

[1] Residents of Panama, in English, are referred to as Panamanians, thus the adjectival form "Panamanian" entity. What are residents of the Turks and Caicos Islands called? Per the website turksandcaicostourism.com, "Belongers," a sobriquet that seems inappropriate to Sebastian, a so-called "exempted company" which cannot itself even do business in the Turks and Caicos Islands. *See People of the Islands*, Turks and Caicos Islands: Beautiful by Nature, https://turksandcaicostourism.com/people-of-the-islands/ (last visited June 30, 2021). Therefore, I will use the clunky locution "Turks and Caicos entity."

entities are charged with is transferring an ownership interest in a limited partnership that is itself a citizen of Delaware. I find that these entities have not subjected themselves to Delaware long-arm service and do not have sufficient minimum contacts with this state to satisfy due process in the exercise of jurisdiction over them. Accordingly, the Motions to Dismiss must be granted. My rationale follows.

## I. BACKGROUND[2]

*A. The Parties and Relevant Non-Parties*

Below, I describe the entities and give them short referential names set off in quotations—these names are different than the referential names used by the parties. I do this in the interest of clarity, and because a blizzard of three-initial references threatened to overwhelm this aging brain. I have included a graphic reference showing the principal entities, their reference names, and the alleged controller for each in Figure 1.

Plaintiff and Counterclaim Defendant Deutsche is a corporation organized under the laws of Germany.[3] Deutsche maintains a branch office in New York, New York and has consented to personal jurisdiction.[4]

---

[2] Except where otherwise noted, the facts in this background section are drawn from the Plaintiffs' Verified Amended Complaint ("Am. Compl.") and the documents incorporated therein. Dkt. No. 326.

[3] Am. Compl. ¶ 8.

[4] *See id.*

Defendant Devon LP is a Delaware limited partnership with its principal office in Pennsylvania.[5] Devon LP has also filed counterclaims and crossclaims for interpleader in this action.[6]

Defendant Devon GP is a Delaware limited partnership and the general partner of Devon LP.[7]

Defendant Sebastian is a corporation organized under the laws of the Turks and Caicos Islands.[8] It is an exempted company, which cannot do business in the Turks and Caicos Islands beyond a *de minimis* level.[9]

The Defendant Transferee Entity is a corporation organized under the laws of Panama.[10] The Transferee Entity formally changed its name from Universal Logistic Matters, S.A. to CPR Management, S.A. in 2015.[11]

Non-party Vik Jr. is a Norwegian billionaire.[12] He was, at all relevant times, the sole shareholder and director of defendant Sebastian.[13]

---

[5] *Id.* ¶ 9.

[6] *See* Def. Devon Park Bioventures, L.P.'s Answer and Verified Countercls.–Crosscls. for Interpleader ("Interpleader"), Dkt. No. 15.

[7] Am. Compl. ¶¶ 10, 20.

[8] *Id.* ¶ 11.

[9] *Id.*

[10] *Id.* ¶ 12.

[11] *Id.* ¶ 12. The Transferee Entity appears to have been formerly known as both Universal Logistic Matters, S.A. and Universal *Logistics* Matters, S.A. *Id.* ¶ 5.

[12] *Id.* ¶¶ 2, 13.

[13] *Id.* ¶ 11.

Non-party Vik Sr. is Vik Jr.'s father and the purported controller of the Transferee Entity.[14] At all times relevant to this action, Vik Sr. was also the sole shareholder of non-party VBI Corporation ("VBI"), as described below.[15]

VBI is a corporation organized under the laws of the Turks and Caicos Islands whose sole shareholder is, and was at all relevant times, Vik Sr.[16] VBI is an exempted Turks and Caicos company, which cannot do business in the Turks and Caicos Islands beyond a *de minimis* level.[17]

**Figure 1**



*B. Proceedings in England*

In 2008, Sebastian failed to satisfy margin calls Deutsche made to recoup losses it incurred trading on Sebastian's behalf.[18] Deutsche filed suit against

---

[14] *Id.* ¶¶ 12, 13.
[15] *Id.* ¶ 14.
[16] *Id.* ¶ 14.
[17] *Id.*
[18] *Id.* ¶¶ 2, 36.

Sebastian in an English court in 2009 seeking amounts owed in connection with those unpaid margin calls, as well as interest and costs (the "English Action").[19] Deutsche prevailed in that action, obtaining a judgment for $235,646,345 in November 2013 (the "English Judgment").[20] Sebastian was also judged liable for 85% of Deutsche's costs, plus interest, and ordered to make an interim payment.[21]

Sebastian sought to appeal portions of the English Judgment, but its appeal was struck when it failed to post the full amount of the judgment as security within 28 days of being ordered to do so by the English Court of Appeals.[22] There is no further prospect of any appeal of the English Judgment.[23]

Deutsche also prevailed on two separate non-party costs applications against Vik Jr. in 2014 and 2016, finding him personally liable for portions of the judgment against Sebastian.[24] Vik Jr.'s attempts to appeal those orders were denied and there is no further prospect of appeal.[25]

More than eight years later, Sebastian has not paid Deutsche any portion of the amount due under the English Judgment.[26] With interest, the judgment debt now

---

[19] *Id.* ¶ 3, 44. The English Action is captioned *Deutsche Bank AG v. Sebastian Holdings, Inc.*, Claim No. 2009 Folio 83. *Id.*
[20] *Id.* ¶¶ 1, 3, 49–51.
[21] *See id.* ¶¶ 50(b)–50(c).
[22] *Id.* ¶¶ 61–63.
[23] *Id.* ¶¶ 63–64.
[24] *Id.* ¶¶ 55–59.
[25] *Id.* ¶¶ 58, 60.
[26] *See id.* ¶ 53.

exceeds $300 million.[27]   Deutsche seeks to satisfy the English Judgment, at least partially, from Sebastian's remaining assets—specifically the Devon Interest.[28]

### C. Sebastian Purports to Transfer the Devon Interest to VBI

In 2012, during the pendency of the English Action and a related action in New York, Sebastian purported to transfer the majority of its remaining non-cash assets to non-party VBI.[29]   The transfer was purportedly made via an Installment Purchase Agreement (the "VBI Agreement") that provided that Sebastian would maintain possession of all or part of the assets by holding them in trust for VBI for up to 4 years.[30]   Among the assets transferred was the Devon Interest,[31] which Sebastian had acquired in 2006.[32] The transfer of the Devon Interest was never approved by Devon LP's general partner, Devon GP, as would have been required by Devon LP's December 1, 2006 Second Amended and Restated Limited Partnership Agreement (the "Partnership Agreement").[33]   Sebastian did not disclose this transaction, or the identity of the purchaser to Deutsche until after the English Judgment.[34]

---

[27] *See id.* ¶¶ 216, 231.
[28] *Id.* ¶ 228.
[29] *Id.* ¶¶ 83–85, 90.
[30] *Id.* ¶ 87.
[31] *Id.* ¶ 90.
[32] *See, e.g.*, Interpleader ¶ 1.
[33] Am. Compl. ¶¶ 90–94, 102–103.
[34] *Id.* ¶¶ 97–100.

*D. Sebastian Purports to Transfer the Devon Interest Again*

In 2014, Sebastian purported to transfer the Devon Interest to a new entity.[35] Sebastian and the Transferee Entity entered the Assignment and Assumption Agreement (the "Assignment Agreement") after the English Judgment was entered and after Deutsche had instituted multiple proceedings in New York and one in Connecticut to collect on that judgment.[36] The Assignment Agreement encompasses two steps, both of which, per Devon LP's Operating Agreement, would have required the approval of Devon GP: first, it provides for Sebastian to transfer its limited partnership interest; second, it provides for the Transferee Entity to be admitted as a limited partner.[37] Deutsche did not learn of this transfer until 2016, in connection with another New York lawsuit seeking to collect amounts owed under the English Judgment; this time by unwinding Sebastian's transfer of the Devon Interest to VBI.[38] I have represented the purported transfers graphically in Figure 2.

---

[35] *Id.* ¶ 113.
[36] *Id.* ¶ 133.
[37] *Id.*
[38] *Id.* ¶ 112.



**Figure 2**

*E. Attempted Distributions to the Transferee Entity*

After the 2014 transaction, Devon LP began making distributions to the Transferee Entity that were owed to it as a limited partner.[39] Devon LP successfully wired $5,589,574 to the Transferee Entity in March of 2015.[40] However, two months later, when Devon LP attempted to wire a second distribution to the Transferee Entity using the same wire instructions, the transfer was rejected and the funds were returned.[41] Deutsche was the intermediary bank in that transaction.[42] Devon LP next attempted to wire the distributions through JP Morgan, but this transaction was also rejected.[43] It was at this point that the Transferee Entity

---

[39] *Id.* ¶¶ 168, 248; Interpleader ¶ 26.
[40] Am. Compl. ¶¶ 168, 248.
[41] *Id.* ¶¶ 169–171.
[42] *Id.* ¶ 169.
[43] *Id.* ¶¶ 170–171.

9

changed its name from Universal Logistic Matters, S.A. to CPR Management, S.A.[44] The Transferee Entity also suggested several alternative methods for transferring the distributions, including processing the transfer through alternative banks or directing the distribution to other recipients.[45] Devon LP did not do so and, to date, Devon LP has not made any further distributions to the Transferee Entity.[46]

### F. Other Proceedings

After prevailing in the English Action, Deutsche attempted to collect on the English Judgment with a series of actions in various courts: on December 5, 2013, Deutsche commenced *Deutsche Bank AG v. Vik et al.*, Index No. 161257/2013 (Sup. Ct. N.Y. Co.) (the "2013 New York Action"), seeking to enforce the English Judgment in New York. On December 13, 2013, Deutsche also commenced *Deutsche Bank AG v. Sebastian Holdings, Inc. and Alexander Vik*, Docket No. X08-FST-CV13-5014167-S (Conn. Super. Ct.) (the "Connecticut Action"), seeking to enforce the English Judgment there. As of 2016, the 2013 New York Action has been stayed pending the outcome of the Connecticut Action, which the parties have represented is awaiting a post-trial decision.[47]

---

[44] *Id.* 170.
[45] *Id.* ¶¶ 172–173.
[46] *Id.* ¶ 179. Devon LP is now in the process of winding up its affairs pursuant to the terms of the Partnership Agreement and Delaware Law. *Id.* ¶ 180.
[47] *Id.* ¶ 118.

In 2016, Deutsche filed a third action seeking to collect amounts owed under the English Judgment in the Supreme Court, New York County, against Vik Jr., Vik Sr., Sebastian, and VBI, alleging *inter alia* that Sebastian's transfer of the Devon Interest to VBI constituted a fraudulent conveyance intended to hinder, delay, and/or defraud Deutsche.[48] Devon LP sought to intervene in that action, which was dismissed for lack of personal jurisdiction.[49]

In March 2017, the Transferee Entity initiated an arbitration proceeding against the Devon Entities in Philadelphia, Pennsylvania, seeking to recover the value of unpaid capital distributions from the Devon Interest (the "Pennsylvania Arbitration").[50] Deutsche sought to intervene in that arbitration in June, but the arbitrator denied its request.[51] The Devon Entities ultimately did not defend the Pennsylvania Arbitration and the Transferee Entity was awarded the full value of the unpaid distributions.[52] The award is awaiting confirmation, as discussed further below.

On the same day it initiated this action, November 16, 2017, Deutsche also filed another action in the Supreme Court, New York County, this time against only Sebastian and the Transferee Entity, alleging *inter alia* that the Assignment

---

[48] *Id.* ¶ 112. That action is captioned *Deutsche Bank AG v. Erik Martin Vik Sr.; Alexander Vik; VBI Corporation; and Sebastian Holdings, Inc.*, Index No. 652156/2016 (Sup. Ct. N.Y. Co.). *Id.*
[49] *Id.* ¶¶ 113–115.
[50] *Id.* ¶ 119.
[51] *Id.* ¶ 121; Interpleader ¶ 57.
[52] Am. Compl. ¶ 121.

Agreement constituted a fraudulent conveyance intended to hinder, delay, and/or defraud Deutsche.[53] Sebastian and the Transferee Entity have contested jurisdiction in that case, which has since been stayed pending the resolution of the instant action.[54]

On April 30, 2018, during the pendency of this action, the Transferee Entity filed a petition to confirm the arbitration award in the Pennsylvania Court of Common Pleas.[55] Devon LP removed that action to the United States District Court for the Eastern District of Pennsylvania, *CPR Management, S.A. v. Devon Park Bioventures, L.P.*, Index No. 18-cv-01973 (E.D. Pa.) (the "Pennsylvania Action") and interpleaded Deutsche as a party with a potential claim to the Devon Interest.[56] The District Court struck the interpleader as procedurally improper and granted the Transferee Entity's petition, confirming the award. Deutsche's appeal of both decisions remains pending before the Third Circuit.[57]

*G. Procedural History*

Deutsche initiated this action on November 16, 2017, asserting claims for (1) recognition and (2) enforcement of the English Judgment against Sebastian, (3) a charging order against the Devon Interest pursuant to 6 *Del. C.* § 17-703, and (4)

---

[53] *Id.* ¶ 118.
[54] *Id.*
[55] *Id.* ¶ 122. That action was captioned *CPR Management, S.A. v. Devon Park Bioventures*, Index No. 180404628 (Pa. Ct. Common Pleas). *Id.*
[56] *Id.* ¶ 123.
[57] *Id.* ¶ 128.

fraud and (5) conspiracy against all defendants.[58] Devon LP answered the original complaint on December 21, 2017.[59] In that pleading, Devon LP asserted counter- and crossclaims for interpleader against Deutsche and the other defendants to determine the rightful owner of the Devon Interest and the distributions associated with it and requested a declaration from this Court that it is entitled to indemnification from Sebastian and the Transferee Entity under the Assignment Agreement.[60] That same day, the Devon Entities also moved to dismiss Deutsche's claims against them under Court of Chancery Rule 12(b)(6).[61]

On January 29, 2018, this Court entered a temporary restraining order preventing the Devon Entities from making any distributions associated with the Devon Interest during the pendency of this action.[62] Deutsche was later granted limited jurisdictional discovery via Chancellor Bouchard's oral ruling of July 20, 2018.[63]

After more than two years, the Chancellor determined that there was "no basis for any additional jurisdictional discovery."[64] Deutsche amended its complaint on

---

[58] *See id.* ¶¶ 212–59 (asserting same causes of action as the original complaint); Verified Compl., Dkt. No. 1.
[59] *See generally* Interpleader, Dkt. No. 15.
[60] Interpleader ¶¶ 65–69.
[61] Devon LP and Devon GP's Mot. to Dismiss, Dkt. No. 16.
[62] Tr. of Jan. 29, 2018 Arg. on Pl.'s Mot. for Temporary Restraining Order and Rulings of the Court 101:23–112:13, Dkt. No. 96.
[63] Tr. of 7.20.18 Telephonic Ruling of the Court on Pl.'s Mot. to Compel Jurisdictional Discovery 19:8–19:11, Dkt. No. 157.
[64] Ltr. re Recent Correspondence 2, Dkt. No. 318.

October 12, 2020.[65]  All defendants renewed their Motions to Dismiss.[66]  The Motions were fully briefed by January 12, 2021.[67]  Due to time constraints at the February 17, 2021 hearing on all motions to dismiss, the movants opted to submit rebuttal letters in lieu of additional oral presentations.  Those letters were received on February 22, 2021 and I consider the motions submitted for decisions as of that date.[68]  This Memorandum Opinion addresses the Motions of Sebastian and the Transferee Entity to dismiss for lack of personal jurisdiction.  In light of my decision here that those Motions should be granted, the parties should inform me what portions of the other outstanding Motions remain to be addressed.

## II. LEGAL STANDARDS

Delaware courts apply a two-step analysis to determine whether the exercise of personal jurisdiction over a non-resident defendant is proper: "the court must first determine that service of process is authorized by statute and then must determine that the exercise of jurisdiction over the nonresident defendant comports with

---

[65] Am. Compl., Dkt. No. 326.

[66] Sebastian's Mot. to Dismiss, Dkt. No. 329; The Devon Entities' Mot. to Dismiss, Dkt. No. 330; The Transferee Entity's Mot. to Dismiss, Dkt. No. 332.

[67] *See* Sebastian's Opening Br., Dkt. No. 329 [hereinafter "Sebastian OB"]; The Devon Entities' Opening Br., Dkt. No. 331 [hereinafter "Devon Entities OB"]; The Transferee Entity's Opening Br., Dkt. No. 333 [hereinafter "Transferee Entity OB"]; Countercl.-Pl. Devon Park LP's Omnibus Answering Br., Dkt. No. 338 [hereinafter "Devon LP AB"]; Deutsche Answering Br., Dkt. No. 339 [hereinafter "Deutsche AB"]; The Devon Entities' Reply Br., Dkt. No. 351 [hereinafter "Devon Entities RB"]; Sebastian's Reply Br., Dkt. No. 352 [hereinafter "Sebastian RB"]; The Transferee Entity's Reply Br., Dkt No. 353 [hereinafter "Transferee Entity RB"].

[68] *See* Ltr. from William Kelleher, Dkt. No. 365 [hereinafter "Sebastian Rebuttal Ltr."]; Ltr. from James M. Yoch, Jr., Dkt. No. 366 [hereinafter "Devon Entities Rebuttal Ltr."]; Ltr. from K. Tyler O'Connell, Dkt. No. 367 [hereinafter "Transferee Entity Rebuttal Ltr."].

traditional due process notions of fair play and substantial justice."[69]  In weighing these elements, the Court "may consider the pleadings, affidavits, and any discovery of record."[70]  "[T]he plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction.  However, where, as here, no evidentiary hearing has been held, a plaintiff need only make a prima facie showing of personal jurisdiction, and the record is construed in the light most favorable to the plaintiff."[71]

### III. ANALYSIS

Sebastian and the Transferee Entity (together the "Jurisdictional Defendants") have moved to dismiss the Amended Complaint and Devon LP's interpleader crossclaims against them for lack of personal jurisdiction pursuant to Court of Chancery Rule 12(b)(2).  Because I conclude that exerting this Court's jurisdiction over them would not comport with the long-arm statute or with traditional due process notions of fair play and substantial justice, I grant the Jurisdictional Defendants' Motions, in part.

The Jurisdictional Defendants argue that this Court lacks personal jurisdiction over them because neither is a Delaware entity, they have not engaged in any activity in Delaware that gives rise to the claims against them, and they are not subject to

---

[69] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).
[70] *Id.*
[71] *Lacey v. Mota-Velasco*, 2020 WL 5902590, at *6 (Del. Ch. Oct. 6, 2020) (citations and internal quotation marks omitted).

15

jurisdiction under the conspiracy theory.[72]  Deutsche and Devon LP oppose the Motions, arguing that jurisdiction is authorized by the long-arm statute and that both entities have sufficient minimum contacts with Delaware to satisfy due process.[73] Deutsche also argues that jurisdiction is permissible under the conspiracy theory.[74] Although Devon LP denies Deutsche's jurisdictional allegations of a conspiracy between the Devon Entities and the Jurisdictional Defendants, it asks this Court to take jurisdiction over the Devon Interest so that it may interplead the other parties and avoid liability arising from the purportedly fraudulent Assignment Agreement.[75]

In its Amended Complaint, Deutsche includes explicit allegations as to personal jurisdiction.  Deutsche alleges that this Court has personal jurisdiction over Sebastian primarily because: Sebastian is the judgment debtor of the English Judgment to be enforced; Sebastian purportedly owns the 23% interest in Devon LP over which Deutsche seeks a charging order; Sebastian is a signatory to Devon LP's Partnership Agreement and the Assignment Agreement, both of which contain Delaware choice of law clauses; Sebastian's bank was listed as the Delaware office of JP Morgan Chase Bank N.A. in a separate agreement that predates the Assignment Agreement, and employees of that branch assisted in preparing that earlier

---

[72] *See* Transferee Entity OB 20–40; Sebastian OB 14–26.
[73] Deutsche AB 45–57, 68–72; Devon LP AB 13–28.
[74] Deutsche AB 62–67.
[75] *See, e.g.*, Devon LP AB 28–29.

agreement (the funds were ultimately deposited with the New York branch); and Sebastian purportedly made false statements to the Devon Entities, Delaware entities doing business in Pennsylvania, in the Assignment Agreement.[76] Similarly, Deutsche alleges that this Court has personal jurisdiction over the Transferee Entity, because it signed the Assignment Agreement containing the Delaware choice of law clause; the Assignment Agreement appointed Devon GP, a Delaware entity, to act as the Transferee Entity's attorney-in-fact, with the ability to execute and file various documents on its behalf; the Transferee Entity allegedly made knowingly false statements to the Devon Entities in its request to be admitted as a limited partner of Devon LP; and the Transferee Entity retained Delaware counsel in its disputes with the Devon Entities, post-distributions.[77]

---

[76] Am. Compl. ¶ 21. I do not consider further alleged acts in Delaware that Chancellor Bouchard previously held failed to state a non-frivolous case for personal jurisdiction: an alleged 2008 transfer from Sebastian to a Delaware bank account; the allegation that representatives of the Transferee Entity encouraged Devon LP to transfer the Devon Interest again, this time to a Delaware entity; or the possibility that Devon LP will file a certificate of cancellation in Delaware as part of the alleged conspiracy. *See generally* Tr. of Telephonic Rulings on Pl.'s Mot. to Compel Jurisdictional Discovery, Dkt. No. 157. These prior rulings are law of the case. *Cf. Thorpe v. CERBCO, Inc.*, 1997 WL 67833, at *4 (Del. Ch. Feb. 6, 1997), aff'd, 703 A.2d 645 (Del. 1997) ("The doctrine of law of the case promotes efficiency and fundamental fairness in cases by counseling against the reconsideration of issues that have already been decided.").

[77] With respect to Deutsche's allegation that the Transferee Entity intentionally or recklessly concealed or destroyed communications from counsel, and failed to produce other documents, that would have established jurisdiction, I note only that this matter was before Chancellor Bouchard, who, in closing discovery, denied Deutsche's outstanding motions to compel and for sanctions. *See* Denied ([Proposed] Order Granting Deutsche Bank AG's Motion for Leave to Take Depositions), Dkt. No. 319; Denied (Proposed Order Granting Deutsche Bank AG's Motion to Compel the Testimony of Defendant CPR Management, S.A.'s Designated Corporate Witness or for Sanctions), Dkt. No. 320. I make my determination, therefore, on the facts of record, rather than the absence thereof, together with Plaintiff-friendly inferences.

*A. Long-Arm Statute*

Delaware's long-arm statute permits service of process over foreign defendants where they have certain contacts with the state.[78] It is intended to be "broadly construed to confer jurisdiction to the maximum extent possible under the Due Process Clause."[79] However, for the long-arm statute to be satisfied, the claims to be litigated must arise out of one or more of the contacts enumerated in the statute.[80] Deutsche and Devon LP maintain that the Jurisdictional Defendants satisfy the statute, under either Sections 3104(c)(1) or 3104(c)(3), but neither the Amended Complaint nor the Interpleader Claim describes any act in Delaware from which this litigation could arise.

Section 3104(c)(1) authorizes personal jurisdiction over a nonresident defendant who in person or through an agent "transacts any business" in Delaware.[81] The Jurisdictional Defendants are not alleged to have transacted any business in Delaware in connection with the causes of action asserted here. Two foreign entities exchanging an ownership interest in a Delaware entity, whether fraudulent or

---

[78] *See* 10 *Del. C.* § 3104(c).

[79] *Hercules Inc. v. Leu Tr. & Banking (Bahamas) Ltd.*, 611 A.2d 476, 480–81 (Del. 1992).

[80] *Mobile Diagnostic Grp. Hldgs., LLC v. Suer*, 972 A.2d 799, 804 (Del. Ch. 2009) ("In order for this Court to exercise jurisdiction under § 3104(c)(1), some act must actually occur in Delaware." Additionally, the claims must have a nexus to [the] forum-related conduct.") (citations and internal quotation marks omitted).

[81] 10 *Del. C.* § 3104(c)(1).

otherwise, is not, without more, a transaction of business in Delaware.[82]  The sole

additional relevant fact—that the parties included a Delaware choice of law (not

venue) provision in the Assignment Agreement governing the transaction—does not

change my analysis.[83]

---

[82] *Mobile Diagnostic Grp. Hldgs., LLC v. Suer*, 972 A.2d at 805 ("It is well settled law that "a contract between a Delaware corporation and a nonresident to . . . transact business outside Delaware, which has been negotiated without any contacts with this State, cannot alone serve as a basis for personal jurisdiction over the nonresident for actions arising out of that contract.") (quoting *Newspan, Inc. v. Hearthstone Funding Corp.,* C.A. No. 13304, 1994 WL 198721, at *6 (Del.Ch. May 10, 1994)); *see also, e.g.*, *Greenly v. Davis*, 486 A.2d 669, 671 (Del. 1984).  In *Greenly*, the Supreme Court affirmed the Superior Court's dismissal for lack of personal jurisdiction where the only contact with Delaware was that "a part of the negotiations included a proposed sale of stock of a Delaware corporation which does transact business in Delaware." *Greenly v. Davis*, 486 A.2d at 671.  Devon LP suggests that *Greenly* is inapplicable because here, rather than a *proposed sale*, the Defendants consummated an assignment of the Devon Interest. *See* Devon LP AB 19 n.9.  Instead, per Devon LP, I should reach the same result as *NRG Barriers, Inc. v. Jelin*, 1996 WL 377014 (Del. Ch. July 1, 1996) because the "Defendants actually sold stock in a Delaware close corporation." *Id.* at *3.  In *NRG*, the Court found that the defendants had transacted business in Delaware where they "sold stock in a corporation intentionally incorporated in Delaware[;] deliberately chose Delaware law to govern the Stock Purchase Agreement[; and] employed Delaware counsel who assisted in the process of negotiating the agreement." *Id.*  In denying the motion to dismiss in *NRG*, however, the Court distinguished *Greenly*, noting "the record in *Greenly* did not indicate a significant portion of the negotiations took place in Delaware, let alone the consummation of the deal." *Id.*  Based on the record before it, the Court in *NRG* surmised that "the business contact with Delaware does not derive solely from the mere fact [of] record ownership of shares . . . in Delaware." *Id.*  Thus, to the extent the rationale in *NRG* is made explicit, it is consistent with the holding of *Greenly* and other cases that transacting in an ownership interest in a Delaware entity is insufficient to confer jurisdiction without additional acts in Delaware related to the transaction.  As will be discussed further as regards due process considerations, such additional contact is lacking here.  Accordingly, and as in *Greenly*, Section 3104(c)(1) is inapplicable, because the Jurisdictional Defendants did not transact business in Delaware.  Devon LP also invokes *NRG* for the proposition that "[t]he mix of these related facts constitutes the transaction of business in Delaware."  I address this contention more fully as it relates to due process.
[83] *Cf. Mobile Diagnostic Group Holdings, LLC v. Suer*, 972 A.2d at 805 ("It is also well established that a choice of Delaware law provision in a contract is not, of itself, a sufficient transaction of business in the State to confer jurisdiction under [Section 3014] (c)(1)").

Section 3104(c)(3) authorizes personal jurisdiction over a nonresident defendant who in person or through an agent "causes tortious injury" in Delaware.[84] The Jurisdictional Defendants are again not alleged to have caused any tortious injury *in Delaware*. The tort allegations here are asserted by Deutsche, a foreign entity, and are based on conduct outside the state, a fraudulent transfer designed to frustrate Deutsche's satisfaction of its judgment.

Deutsche did business with a citizen of the Turks and Caicos Islands, a British Overseas Territory. It obtained a judgment against that entity in a British court. It alleges that collection of that judgment has been frustrated by the judgment debtor's fraudulent transfer of an asset to a Panamanian citizen. The fact that the asset in question was equity in a Delaware entity does not equate to an injury in Delaware, nor, without more, to doing business in Delaware. Because the Jurisdictional Defendants are not alleged to have taken any actions in Delaware that give rise to the claims against them, the long-arm statute does not support exercising jurisdiction.

*B. Conspiracy Jurisdiction*

Alternatively, Deutsche argues that the same factual allegations satisfy the requirements for conspiracy jurisdiction.[85] The conspiracy theory "does not attempt

---

[84] 10 *Del. C.* § 3104(c)(3).
[85] Deutsche AB 62–67.

20

to create a separate basis for jurisdiction . . . . [Instead, it] asserts that those who seek to avoid our courts by acting at a distance may nevertheless create sufficient minimum contacts with Delaware to satisfy the long-arm statute and due process."[86] To establish jurisdiction under the conspiracy theory, a plaintiff must show that:

> (1) a conspiracy to defraud existed; (2) the defendant was a member of that conspiracy; (3) a substantial act or substantial effect in furtherance of the conspiracy occurred in the forum state; (4) the defendant knew or had reason to know of the act in the forum state or that acts outside the forum state would have an effect in the forum state; and (5) the act in, or effect on, the forum state was a direct and foreseeable result of the conduct in furtherance of the conspiracy.[87]

This five-part test functionally encompasses both prongs of Delaware's jurisdictional analysis[88]—a statutorily defined nexus to the state and compliance with constitutional notions of due process, which I address further below. The conspiracy theory is not a key to unlock universal jurisdiction, however.[89] It is a tool to ensure that actors, who know that their conspirators will take substantial

---

[86] *Lacey v. Mota-Velasco*, 2020 WL 5902590, at *6 (Del. Ch. Oct. 6, 2020).

[87] *Istituto Bancario Italiano v. Hunter Engineering Co.*, 449 A.2d 210, 225 (Del. 1982).

[88] *See, e.g.*, *Konstantino v. AngioScore, Inc.*, 2015 WL 5770582, at *7 (Del. Ch. Oct. 2, 2015).

[89] *See Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 976 (Del. Ch. 2000) ("This theory is very narrowly construed. Plaintiffs must assert specific factual evidence, not conclusory allegations, to show that the non-resident defendants were conspirators in some wrongful act resulting in harm to Delaware entities or their owners in order for the Court to exercise jurisdiction over them.").

actions or cause harms in Delaware, do not escape our process.[90] This, Deutsche has failed to demonstrate, even with the benefit of inferences in its favor.

Deutsche alleges that the Jurisdictional Defendants (and the Devon Entities) are engaged in a conspiracy to prevent Deutsche from recovering on the English Judgment by fraudulently transferring the Devon Interest between different entities and ultimately liquidating Devon LP.[91] Assuming at this stage that Deutsche's fraud and conspiracy allegations are sufficiently well-pled, I nonetheless conclude that this theory fails because it is not reasonably conceivable that any substantial act or substantial effect in furtherance of the conspiracy took place in Delaware.

Most of the specific facts alleged to be in furtherance of the conspiracy clearly occurred outside Delaware: statements made in documents and emails exchanged between the Jurisdictional Defendants and the Devon Entities in connection with the Assignment Agreement occurred where the entities are located—respectively, the Turks and Caicos Islands, Panama, or Pennsylvania—not in Delaware where the Devon Entities were formed;[92] and, although Sebastian has a Delaware bank account, the funds dispersed to Devon LP in 2014 pursuant to the Assignment

---

[90] *Computer People, Inc. v. Best Int'l Grp., Inc.*, 1999 WL 288119, at *5 (Del. Ch. Apr. 27, 1999) ("The conspiracy theory of jurisdiction is not, strictly speaking, an independent jurisdictional basis, but rather, is a shorthand reference to an analytical framework where a defendant's conduct that either occurred or had a substantial effect in Delaware is attributed to a defendant who would not otherwise be amenable to jurisdiction in Delaware.").

[91] Am. Compl. ¶¶ 23–29.

[92] *See, e.g., id.* ¶¶ 21–22, 139–150.

Agreement were released from an escrow account held by JP Morgan's New York branch.[93] These are thus not substantial acts in Delaware in furtherance of the alleged conspiracy.

Deutsche next points to the Assignment Agreement's appointment of Devon GP as the Transferee Entity's attorney-in-fact, with the ability to act on its behalf in Delaware. That entity does business in Pennsylvania, however, and there is no indication in the record that Devon GP took any action on behalf of the Transferee Entity in Delaware. Indeed, there was no reason for Devon GP to take any action in Delaware on the Transferee Entity's behalf, because there is no allegation in the Amended Complaint that any acts in Delaware were required to consummate the Assignment Agreement.

The Amended Complaint also alleges that the Transferee Entity used Delaware counsel to attempt to recover the distributions withheld by the Devon Entities, post-transfer. The Transferee Entity retained Delaware counsel in 2016 in connection with the Pennsylvania Arbitration, which, I note, took place in Pennsylvania.[94] Deutsche does not allege that Delaware counsel took any acts in Delaware and there is no precedent for the theory that merely retaining Delaware counsel supports jurisdiction. I also note that the action contemplated, litigation by

---

[93] *See id.* ¶¶ 16, 21.
[94] *See id.* ¶¶ 17, 22, 178.

one of the Jurisdictional Defendants against its alleged co-conspirators the Devon Entities, seems unlikely to be in furtherance of their conspiracy in any event.

In sum, neither a substantial act or substantial effect in furtherance of the conspiracy is alleged to have occurred in Delaware, and no basis exists to extend jurisdiction over the Jurisdictional Defendants under the conspiracy theory.

*C. Due Process*

The parties, at oral argument, concentrated on the due process prong of the jurisdictional analysis. Accordingly, and in the interests of completeness, I address it here.

Compliance with due process requires a "minimum contacts analysis, which seeks to determine the fairness of subjecting a nonresident defendant to suit in a distant forum by considering all of the connections among the defendant, the forum and the litigation."[95] Even a single act can be sufficient contact to confer jurisdiction, where the claim is based on that act.[96] But the act must be a substantial one.[97] Thus, the "defendant's conduct and connection with the forum state should

---

[95] *Werner v. Miller Tech. Mgmt., L.P.*, 831 A.2d 318, 330 (Del. Ch. 2003) (citations and internal quotation marks omitted).

[96] *See, e.g., Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 978 (Del. Ch. 2000).

[97] *See EBP Lifestyle Brands Holdings, Inc. v. Boulbain*, 2017 WL 3328363, at *6 (Del. Ch. Aug. 4, 2017) ("[T]he contacts proffered by the plaintiff to meet his burden must relate to some act by which the defendant has deliberately created obligations between himself and this forum.") (internal quotation marks omitted).

be such that he can reasonably anticipate being haled into court in the nonresident forum."[98]

Even assuming that Delaware's long-arm statute supports exercising jurisdiction, due process places the Jurisdictional Defendants beyond this Court's reach. The Jurisdictional Defendants are foreign entities, as is Deutsche.[99] Deutsche and Sebastian did business together, but not in Delaware. Deutsche sued and obtained a judgment against Sebastian in Britain. Deutsche seeks to collect on that judgment, in which Sebastian was found liable for conduct entirely outside Delaware. Thus, there is no connection between Delaware and Sebastian's status as a judgment debtor of Deutsche. Sebastian is charged with a fraudulent transfer of its interest in a Delaware entity to avoid collection of the judgment. Holding or transacting in ownership interests in Delaware entities does not, without more, create jurisdiction, however.[100] Nor does our law support exercising jurisdiction based on

---

[98] *Werner v. Miller Tech.*, 831 A.2d at 330 (citations and internal quotation marks omitted).

[99] Deutsche also suggests that the Transferee Entity waived its right to contest jurisdiction by actively participating in this litigation beyond a limited appearance to challenge jurisdiction. While a defendant can lose the right to contest jurisdiction, the factual record demonstrates that the Transferee Entity properly raised jurisdiction as its "first defensive move" and participation in preliminary discovery (even via aggressive litigation tactics), as has occurred here, does not constitute abandonment of the defense. *Ross Hldg. & Mgmt. Co. v. Advance Realty Grp., LLC*, 2010 WL 1838608, at *11 (Del. Ch. Apr. 28, 2010).

[100] *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449 A.2d 210, 222 (Del. 1982) (noting that the statutory situs of stock in Delaware is insufficient to justify jurisdiction); *Papendick v. Robert Bosch GmbH*, 410 A.2d 148, 152 (Del. 1979) (noting that stock ownership of a Delaware subsidiary is not, without more, a sufficient contact for which to establish jurisdiction).

25

the other facts into which Deutsche seeks to sink its jurisdictional hook:[101] being party to a contract with a Delaware choice of law clause,[102] receiving distributions from a Delaware entity, simply owning a Delaware bank account, appointing a Delaware entity as attorney-in-fact, or engaging in fraud or conspiracy outside the state.

Deutsche and Devon LP do not even seriously argue that any of the above allegations, standing alone, provide a basis for jurisdiction. Instead, they encourage me to look at them in the aggregate. In addition to the conspiracy theory invoked by Deutsche, Devon LP cites to *NRG Barriers, Inc. v. Jelin*, insisting that the "mix of [the above] related facts" demonstrates that the Jurisdictional Defendants "were on notice [that the] Plaintiff could sue them in Delaware."[103] I disagree.

---

[101] *See, e.g.*, *Lacey v. Mota-Velasco*, 2020 WL 5902590, at *6 (Del. Ch. Oct. 6, 2020) (dismissing for lack of jurisdiction where alleged conspiracy was between foreign entities acting outside Delaware); *EBP Lifestyle Brands Holdings, Inc. v. Boulbain*, 2017 WL 3328363, at *7 (dismissing for lack of personal jurisdiction where choice of law clause was only connection to Delaware); *Mobile Diagnostic Group Holdings, LLC*, 972 A.2d 799, 805 (Del. Ch. 1999) (same); *HMG/Courtland Properties, Inc. v. Gray*, 729 A.2d 300, 311 (Del. Ch. 1999) (receiving partnership distributions from a Delaware entity insufficient to confer jurisdiction).

[102] I also note that, to the extent Deutsche attempts to rely on *Hazout v. Tsang Mun Ting*, 134 A.3d 274 (Del. 2016), to grant jurisdiction, that case involved more than "[a]greements [that] reflected the parties' choice to use the law of Delaware as their common language of commerce, and their understanding that litigation over later contractual differences could ensue in Delaware." *Id.* at 293. The defendant contesting jurisdiction in that case was the director of a Delaware corporation being sued for actions taken in his official capacity in connection with negotiating the agreements at issue, albeit in Canada. Thus, in light of multiple connections between Delaware, the parties, and the litigation, the Court noted "all sides to the matter understood that . . . the jurisdiction that was their focus was the home of the fried oyster sandwich, and not the home of poutine or dim sum. That Tsang happened to be in Hong Kong and Hazout in Canada was a matter of geography." *Id.*

[103] *NRG Barriers, Inc. v. Jelin*, 1996 WL 377014, at *2, *5 (Del. Ch. July 1, 1996).

In *NRG*, the Court denied a motion to dismiss for lack of personal jurisdiction where the plaintiff sought to enforce its rights under a Stock Purchase Agreement. In concluding that the *NRG* defendants had sufficient minimum contacts with Delaware to justify exercising jurisdiction, the Court noted that "statutory situs of the stock is not the only connection to Delaware. *It is one of many* ties satisfying the minimum [contacts] requirement."[104] Other ties the Court treated as significant include that "Delaware lawyers were *substantially involved* in drafting the agreement"[105] and that "[t]he agreement is the basis on which [the plaintiff] brings this action."[106] Thus, the plaintiff in *NRG* did not invoke Delaware jurisdiction merely based on ownership of stock in a Delaware entity. Rather, included in the "mix" of related facts were the facts that the defendants in that case negotiated a "significant portion" of the stock purchase agreement at issue in Delaware and the plaintiff was asserting its rights under that agreement, which fulfilled both the long-arm statute and due process prongs. No such allegation is made here; nor is such an inference warranted based on the record. Here, it is alleged that two foreign entities caused a Delaware limited partnership to transfer an ownership interest from one to the other. There is simply nothing in the record to indicate that the agreement regarding the transfer was negotiated in Delaware. The allegation that the

---

[104] *Id.* at *4 (emphasis added).
[105] *Id.* (emphasis added).
[106] *Id.*

27

transaction was fraudulent does not change the jurisdictional analysis. Furthermore, because the dispute in *NRG* was as to the meaning of the stock purchase agreement itself, which was negotiated in Delaware and chose Delaware law, the cause of action arose out of the defendants' contact with Delaware. Thus, the Court's finding of jurisdiction in that case is completely consistent with the well-established directive that defendants are only amenable to suit in Delaware for claims that arise where they purposefully avail themselves of Delaware's benefits and protections. Allegations supporting such purposeful availment are lacking here. Accordingly, jurisdiction is not available.

There is no allegation in the Amended Complaint that the Jurisdictional Defendants' contacts with Delaware are anything more than fortuitous; nor do the claims against them arise from those contacts. At its heart, this is litigation is about nothing more than an allegedly fraudulent transfer of equity in a Delaware entity between two foreign citizens, to frustrate a judgment debt obtained by a third foreign entity in a foreign jurisdiction. Accordingly, due process dictates that this Court must stand aside.

## IV. CONCLUSION

If the facts are as they appear from this pleadings-stage record, Deutsche is rightfully frustrated at its inability to collect on its judgment, caused by fraudulent transfers between its judgment debtor and other foreign entities. That frustration

based on the facts alleged here does not trump the long-arm statute or the due process rights of the Defendants, however. The Jurisdictional Defendants' Motions to Dismiss are granted in part. As pointed out above, there are additional motions outstanding. Nothing in this Memorandum Opinion is meant to resolve jurisdictional issues regarding Deutsche's request for a charging order or Devon LP's interpleader claim, which have been characterized as *in rem* or *quasi in rem* and supported by statutory jurisdiction. The dismissal of the Jurisdictional Defendants remains pending in that regard and the January 29, 2018 restraining order *shall* remain in place. I note that several other jurisdictions are now considering Deutsche's request for aid in satisfaction of its judgment, and a stay of portions of this litigation may be warranted. The parties should confer and schedule a conference on the remaining pending motions, as described above.