# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE CARVANA CO. STOCKHOLDERS LITIGATION | ) ) | CONSOLIDATED C.A. No. 2020-0415-KSJM |

## MEMORANDUM OPINION

Date Submitted: March 14, 2022
Date Decided: August 31, 2022

Christine M. Mackintosh, Rebecca A. Musarra, GRANT & EISENHOFER P.A., Wilmington, Delaware; Ned Weinberger, LABATON SUCHAROW LLP, Wilmington, Delaware; Jason M. Leviton, Joel A. Fleming, Lauren Godles Milgroom, Amanda R. Crawford, BLOCK & LEVITON LLP, Boston, Massachusetts; Domenico Minerva, John Vielandi, David MacIsaac, LABATON SUCHAROW LLP, New York, New York; *Counsel for Co-Lead Plaintiffs Anthony Franchi, Construction Industry and Laborers Joint Pension Trust for Southern Nevada, St. Paul Electrical Construction Pension Plan, St. Paul Electrical Construction Workers Supplemental Pension Plan (2014 Restatement), and Retirement Medical Funding Plan for the St. Paul Electrical Workers.*

David E. Ross, Adam D. Gold, R. Garrett Rice, ROSS ARONSTAM & MORITZ LLP, Wilmington, Delaware; Brian M. Lutz, GIBSON, DUNN & CRUTCHER LLP, San Francisco, California; Colin B. Davis, Katie Beaudin, GIBSON, DUNN & CRUTCHER LLP, Irvine, California; *Counsel for Nominal Defendant Carvana Co.*

John L. Reed, Ronald N. Brown, III, Peter H. Kyle, Kelly L. Freund, DLA PIPER LLP (US), Wilmington, Delaware; *Counsel for Defendants Ernest Garcia III and Ernest Garcia II.*

**McCORMICK, C.**

The plaintiff, a stockholder of Carvana Co. ("Carvana" or the "Company"), asserts derivative claims challenging a $600 million sale of common stock to handpicked participants at a time when the trading price of Carvana's stock was depressed (the "Direct Offering"). The Direct Offering was orchestrated by Carvana's controller, Ernest Garcia II ("Garcia Senior") and his son, Ernest Garcia III ("Garcia Junior"). The Garcias selected investors to participate in the Direct Offering and participated themselves. The public stockholders were excluded.

In a prior decision, the court denied Garcia Junior's motion to dismiss for failure to state a claim and failure to plead demand futility. This decision resolves Garcia Senior's motion to dismiss for lack of personal jurisdiction.

As the basis for this court's exercise of personal jurisdiction over Garcia Senior, the plaintiff relies on a provision in Carvana's certificate of incorporation that designates Delaware courts as the exclusive forum for litigating claims for breach of fiduciary duties against stockholders (the "Forum Provision"). Garcia Senior caused Carvana to adopt the Forum Provision by executing a written stockholder consent. The written consent approved an amendment to the certificate of incorporation to add the Forum Provision. By approving the amendment adding the Forum Provision, Garcia Senior implicitly consented to this court's exercise of jurisdiction over him as to claims described in the Forum Provision. Accordingly, Garcia Senior's motion to dismiss for lack of personal jurisdiction is denied.

## I. FACTUAL BACKGROUND

This decision incorporates the Factual Background of the court's Memorandum Opinion dated June 30, 2022,[1] and includes additional facts relevant to the personal jurisdiction issues.

The Garcias co-founded Carvana in 2012. They took Carvana public in 2017. Garcia Junior has served as Carvana's President, Chief Executive, and Chairman since Carvana's formation.

Garcia Senior is permanently barred from membership, employment, or association with any NYSE member and holds no official position at Carvana. Garcia Senior has owned a majority of Carvana's voting stock since its formation. His voting power derives primarily from his ownership of super-voting Class B shares.

In connection with the initial public offering, Carvana amended and restated its certificate of incorporation. Carvana's stockholders executed a written consent approving and adopting the amended and restated certificate of incorporation.[2] The amendments added Article Twelve containing the Forum Provision. The text of the Forum Provision appears below in the Legal Analysis.

The amended and restated certificate of incorporation specifically names the Garcias and provides them with benefits that other stockholders do not enjoy. For example,

---

[1] C.A. No. 2020-0415-KSJM, Docket ("Dkt.") 92.

[2] *See* Dkt. 78, Co-lead Plaintiffs' Omnibus Answering Brief in Opposition to Defendants' Motion to Dismiss ("Pl.'s Answering Br."), Ex. B (Amended and Restated Certificate of Incorporation of Carvana Co.).

it provides that the Class B shares will be entitled to 10 votes only so long as the Garcias hold 25% of the Class A common stock.[3] It also provides the Garcias with special rights concerning competition and corporate opportunities.[4]

Because Garcia Senior held a majority of the Company's voting power at the time, his written consent was necessary for the Company to adopt the amended and restated certificate of incorporation, including the Forum Provision.

In connection with the initial public offering, the Garcias also executed an exchange agreement and an LLC agreement. Both documents contain Delaware-exclusive forum provisions.

## II.    LEGAL ANALYSIS

"When a defendant moves to dismiss a complaint pursuant to Court of Chancery Rule 12(b)(2), the plaintiff bears the burden of showing a basis for the court's exercise of jurisdiction over the defendant."[5] "In ruling on a Rule 12(b)(2) motion, the court may consider pleadings, affidavits, and any discovery of record."[6] If there is no discovery of record or evidentiary hearing, "plaintiffs need only make a *prima facie* showing of personal jurisdiction and 'the record is construed in the light most favorable to the plaintiff.'"[7]

---

[3] *Id.* at 2.

[4] *Id*. at 7–9.

[5] *Ryan v. Gifford*, 935 A.2d 258, 265 (Del. Ch. 2007).

[6] *Id.*

[7] *Id.* (footnote omitted) (quoting *Cornerstone Techs., LLC v. Conrad*, 2003 WL 1787959, at *3 (Del. Ch. Mar. 31, 2003)).

Typically, Delaware courts resolve questions of personal jurisdiction using a two-step analysis, determining first whether service of process was authorized by statute, and second, whether the defendant had minimum contacts with Delaware sufficient to satisfy due process concerns.[8]

The requirement that a court have personal jurisdiction, however, is a waivable right.[9] "A defendant can agree to the court's exercise of personal jurisdiction."[10] That agreement can be express or implied.[11] When a party agrees to litigate in a forum, the party is considered to have implicitly consented to personal jurisdiction in that forum.[12] When a party has consented to jurisdiction, the court can forego the typical two-step analysis.[13]

In this case, the plaintiff argues that Garcia Senior consented to the exercise of personal jurisdiction by Delaware courts when he caused Carvana to adopt the Forum Provision.

---

[8] *Matthew v. Fläkt Woods Gp. SA*, 56 A.3d 1023, 1027 (Del. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[9] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985).

[10] *In re Pilgrim's Pride Corp. Deriv. Litig.*, 2019 WL 1224556, at *10 (Del. Ch. Mar. 15, 2019) (collecting cases).

[11] *Id.* at *11.

[12] *Id.*; *Solae, LLC v. Hershey Canada, Inc.*, 557 F. Supp. 2d 452, 456 (D. Del. 2008) (citing *Res. Ventures, Inc. v. Res. Mgmt. Int'l, Inc.*, 42 F. Supp. 2d 423, 431 (D. Del. 1999)).

[13] *Neurvana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *3 (Del. Ch. Sept. 18, 2019); R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corporations & Business Organizations*, §13.4 (3d ed. 2019) ("Consent to personal jurisdiction is considered a waiver of any objection on due process grounds and an analysis under minimum contacts is considered unnecessary.").

The Forum Provision selects this court as the exclusive forum for certain disputes. It states:

> Unless this Corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware (or, if the Court of Chancery does not have jurisdiction, the United States District Court for the District of Delaware) shall, to the fullest extent permitted by law, be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer, employee or stockholder of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the DGCL or as to which the DGCL confers jurisdiction on the Court of Chancery of the State of Delaware, the Certificate of Incorporation or the Bylaws or (iv) any action asserting a claim governed by the internal affairs doctrine. As used in this Certificate of Incorporation, the term "Claim" means the actions, proceedings or claims referred to in clauses (i) through (iv) on this Section 1.[14]

The Forum Provision clearly applies to this litigation. Among other things, the plaintiff asserts a claim of breach of a fiduciary duty owed by "a stockholder of the

---

[14] Pl.'s Answering Br., Ex. B, at 14. A court may take judicial notice of the contents of a certificate of incorporation in deciding a motion to dismiss under Rule 12(b)(6). *See In re Wheelabrator Techs. Inc. S'holders Litig.*, 1992 WL 212595, at \*12 (Del. Ch. Sept. 1, 1992) ("The Court is not barred from taking judicial notice of a Delaware corporation's certificate of incorporation simply because the procedural setting is a motion to dismiss under Rule 12(b)(6)."). The sources the court can consider on a Rule 12(b)(2) motion are even broader than those that can be considered on a 12(b)(6) motion. *See Sample v. Morgan*, 935 A.2d 1046, 1055 (Del. Ch. 2007) ("In considering a motion to dismiss for lack of personal jurisdiction under Court of Chancery Rule 12(b)(2), I am not limited to the pleadings."). It follows that the court can take judicial notice of a certificate of incorporation on a Rule 12(b)(2) motion.

Corporation to the Corporation." Accordingly, the plaintiff was obligated to file his claims in this court.

In Garcia Senior's view, the Forum Provision binds the plaintiff but not him. As Garcia Senior points out, nothing about the Forum Provision expressly provides that stockholders, such as Garcia Senior himself, consent to this court's exercise of personal jurisdiction for claims described in the provision. The plaintiff, however, does not argue that Garcia Senior expressly consented. Rather, the plaintiff relies on a theory of implicit consent.

In support of his implicit-consent theory, the plaintiff draws heavily on this court's analysis in *In re Pilgrim's Pride Corporation Derivative Litigation*.[15] There, stockholders of Pilgrim's Pride brought derivative claims against the company's controlling stockholder, JBS S.A. Pilgrim's Pride was a Delaware corporation and JBS was an entity organized under the laws of Brazil. The plaintiffs sued JBS for breaching its fiduciary duties as a controller by causing Pilgrim's Pride to buy one of JBS's other subsidiaries. JBS moved to dismiss the complaint for lack of personal jurisdiction.[16]

As the sole basis for this court's exercise of personal jurisdiction over JBS, the plaintiffs argued that the controller implicitly consented to the court's exercise of personal jurisdiction when its representatives on the company's board adopted a forum-selection bylaw. Vice Chancellor Laster agreed with the plaintiffs' arguments, citing a number of

---

[15] 2019 WL 1224556 (Del. Ch. Mar. 15, 2019).

[16] *Id.* at *1.

6

case-specific factors as *prima facie* evidence that the controller implicitly consented to this court's exercise of personal jurisdiction. The following passage contains the meat of the Vice Chancellor's analysis:

> In this case, the facts alleged in the complaint support a finding of implicit consent. The Board adopted the Forum-Selection Bylaw on the same day that the Committee gave its final approval for the Acquisition. It is reasonable to infer that the Board adopted the Forum-Selection Bylaw intending that it would apply to any Delaware law claims that a stockholder plaintiff might bring challenging the Acquisition. The Forum-Selection Bylaw selects the Delaware Court of Chancery as the sole and exclusive forum for "any action asserting a claim of breach of fiduciary duty owed by any . . . stockholder of the Corporation to the Corporation or the Corporation's stockholders." Parent, as the controlling stockholder and counterparty in the Acquisition, was the obvious stockholder defendant in any action asserting a claim for breach of fiduciary action. Through its power to select the Parent Directors, Parent designated six of the nine members of the Board. Five of those six were executive officers of Parent or its controlled subsidiaries. Parent also controlled a super-majority of the Company's voting power. If it did not like the Forum-Selection Bylaw, it could amend it using that authority.
>
> In my view, under these facts, Parent consented implicitly to the existence of personal jurisdiction in Delaware when its representatives on the Board participated in the vote to adopt the Forum-Selection Bylaw. This is a case governed by Delaware law in which the State of Delaware has a substantial interest. As the Board necessarily recognized when it adopted the Forum-Selection Bylaw, a case of this nature should be heard in a Delaware court. That includes the dimension of this case that relates to Parent's involvement as the self-interested controller.[17]

---

[17] *Id*. at *13 (citations omitted).

7

Breaking it down, the factors identified by the Vice Chancellor as evidence of JBS's implicit consent fall into two categories.

The first category of factors suggested that the intent of the forum selection provision was to funnel claims for breach of fiduciary duty against the controller into the Delaware courts. This intent was evident from the provision's language, which covered actions for breach of fiduciary duties owed by "*any stockholder of the corporation.*"[18] Only controlling stockholders owe fiduciary obligations under Delaware law.[19] Thus, JBS was the "obvious stockholder defendant" in any action brought under that bylaw.[20] This intent was also inferred by the timing of the board's adoption of the provision, which came on the same day that a board committee approved the challenged acquisition.

The second category of factors tied the forum-selection bylaw to JBS specifically. Toward this end, the Vice Chancellor focused on JBS's influence over the process by which the provision was adopted. The provision was adopted through a bylaw amendment effected by a vote of the board, so JBS was not involved directly in its adoption. The Vice Chancellor noted, however, that JBS appointed six of the nine members of Pilgrim's Pride's board, and five of those six members were executives of JBS or a JBS subsidiary. Thus, a majority of the board was beholden to JBS. Moreover, the Vice Chancellor

---

[18] *Id.* at *12 (emphasis added).

[19] *Ivanhoe P'rs v. Newmont Min. Corp.*, 535 A.2d 1334, 1344 (Del. 1987) ("Under Delaware Law a shareholder owes a fiduciary duty only if it owns a majority interest in or exercises control over the business affairs of the corporation.").

[20] *Pilgrim's Pride*, 2019 WL 1224556, at *13.

8

observed that JBS "controlled a super-majority of the Company's voting power. If it did not like the Forum-Selection Bylaw, it could amend it using that authority."[21]

Because this court's authority to exercise personal jurisdiction based on a forum selection clause is rooted in the defendant's consent, this second category of factors was critical to the court's analysis. That is, if JBS lacked any ability to direct or reverse the result of the board's process, then JBS could not be said to have implicitly consented to that result.

In this case, the intent in adopting the Forum Provision is as clear as that in *Pilgrim's Pride*. The language of the Forum Provision captures claims for "breach of a fiduciary duty owed by any . . . stockholder[.]"[22] Again, only controlling stockholders of Delaware corporations owe fiduciary obligations. Garcia Senior has held hard control over Carvana since the Forum Provision was adopted, making him the obvious stockholder to whom this language would apply.

More importantly, Garcia Senior's involvement in adopting the provision was more direct than in *Pilgrim's Pride*. The Forum Provision appears in an amendment to the certificate of incorporation, which was approved by written consent of the Carvana stockholders. At that time, and at all relevant times, Garcia Senior held a majority of Carvana's voting power. Thus, Garcia Senior's approval of the amended certificate of

---

[21] *Pilgrim's Pride*, 2019 WL 1224556, at *13.

[22] *Id.* at *12; Pl.'s Answering Br., Ex. B at 14.

9

incorporation, including the Forum Provision, was a necessary and direct cause of its adoption.

As an added factor, it is reasonable to infer that Garcia Senior read the amendment to the certificate of incorporation before executing a written consent approving it; as discussed above, the amended and restated certificate of incorporation expressly provides the Garcias with benefits other stockholders do not enjoy. Moreover, the Garcias executed an exchange agreement and an LLC agreement in connection with the IPO, both of which require any claims to be brought in Delaware courts.[23] The logical inference is that Garcia Senior "necessarily recognized" the State of Delaware's "substantial interest" in resolving these Delaware law claims when he caused Carvana to adopt the Forum Provision.[24]

It is true, as Garcia Senior argues, that *Pilgrim's Pride* is distinguishable in one—albeit minor—way. There, the forum selection bylaw was adopted on the same day that a board committee recommended the transaction at issue in the litigation. From this timing, one can infer that the board intended that stockholder claims challenging that transaction specifically be subject to the forum selection bylaw. In this case, nothing suggests that Garcia Senior had the Direct Offering in mind when he caused Carvana to adopt the Forum Provision, as Carvana adopted the Forum Provision three years before its board approved the Direct Offering.

---

[23] Dkt. 66, Verified Amended Derivative and Class Action Complaint ¶¶ 186–87.

[24] *Pilgrim's Pride*, 2019 WL 1224556, at *13.

10

This distinction is inconsequential. Garcia Senior did not need to foresee the specific transaction that would give rise to the claims against him for the Forum Provision to evidence his implicit consent. Consider the purpose of forum selection provisions in corporate charters and bylaws. Expressly permitted by Section 115 of the Delaware General Corporation Law,[25] those provisions are intended to corral internal affairs cases so they can be heard in the Delaware courts.[26] *Boilermakers Local 154 Retirement Fund v. Chevron Corp.* is the common law predecessor to § 115.[27] *Boilermakers* specifically identified reasons why defendants would want to include forum selection provisions in governing documents.[28] In upholding a board-adopted Delaware forum selection bylaw, then-Chancellor Strine noted the benefits of "channeling internal affairs cases into the courts of the state of incorporation," which included "bring[ing] order to what the boards of [the defendant corporations] say they perceive to be a chaotic filing of duplicate and

---

[25] 8 *Del. C.* § 115 ("The certificate of incorporation or the bylaws may require . . . that any or all internal corporate claims shall be brought solely and exclusively in any or all of the courts in this State.").

[26] *See generally* Andrew Holt, *Protecting Delaware Corporate Law: Section 115 and Its Underlying Ramification*s, 5 Am. U. Bus. L. Rev. 209, 219 (2016) ("Exclusive forum selection clauses were supposed to cure the plague that is multi-jurisdictional litigation on Delaware corporations and their officers and directors."); Verity Winship, *Shareholder Litigation by Contract*, 96 B.U. L. Rev. 485 (2016) ("Faced with multiforum litigation, courts, defense counsel, and commentators began to call for a way to consolidate the litigation in the court of the state of incorporation, often Delaware. One way to do this was for corporations to adopt an exclusive forum selection clause in their charter or bylaws.").

[27] *See, e.g., Salzberg v. Sciabacucchi*, 227 A.3d 102, 117 (Del. 2020) ("The 2015 amendments were intended, in part, to codify *Boilermakers*.").

[28] *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 952 (Del. Ch. 2013).

inefficient derivative and corporate suits against the directors and the corporations."[29] It is fair to infer that Garcia Senior knew of the purpose of forum selection provisions when he caused Carvana to adopt one. At a minimum, his agents (such as the counsel planning the IPO) knew about them, and their knowledge can be imputed to Garcia Senior.

As a matter of policy, the functioning of a forum provision would be dramatically undermined if the law required transaction-specific consent to support personal jurisdiction over a defendant. Garcia Senior cites no case in support of such a rule. Such a rule would enable a controller to put stockholder plaintiffs in a no-win scenario: the forum provision would force stockholders to sue in a particular court, yet the controller could claim not to be subject to jurisdiction there.

Summing it up, Garcia Senior executed a written stockholder consent causing the Company to adopt a requirement that any stockholder suing him for breach of fiduciary duties file suit in this court. By taking that action, Garcia Senior consented implicitly to this court's exercise of personal jurisdiction over him in connection with stockholder claims that he breached his fiduciary obligations.

Garcia Senior urges a different outcome based on "Delaware precedent [holding] that purchasing or owning shares of stock in a Delaware corporation, standing alone, is not enough to enable a Delaware court to exercise personal jurisdiction over a non-consenting party, even in cases of sole ownership."[30] Garcia Senior correctly observes that it is "settled

---

[29] *Id.*

[30] *Pilgrim's Pride*, 2019 WL 1224556, at *14.

federal law that ownership of stock in a Delaware corporation is insufficient to satisfy due process requirements."[31] Even "complete ownership of a Delaware subsidiary standing alone is insufficient to confer personal jurisdiction."[32]

This line of authorities is not implicated here. This is not a case of mere stock ownership constituting consent to jurisdiction. This is a case where the controller caused the Company to adopt a provision requiring that any plaintiff suing a stockholder for breach of fiduciary duty do so in this court. The plaintiff simply seeks to enforce that requirement.

Garcia Senior also cites to a portion of *Pilgrim's Pride* where the Vice Chancellor limited his holdings to the facts of that case and identified differing fact patterns that might raise distinguishable concerns.[33] The Vice Chancellor expressly left open the question of "whether a Delaware court could assert jurisdiction over a stockholder based solely on a board-adopted forum-selection provision if the stockholder had no other ties to this state."[34] He also declined to "consider whether a Delaware court could assert jurisdiction over a controller based solely on a board-adopted forum-selection provision if the controller had

---

[31] Dkt. 74, Opening Brief in Support of Defendants Ernest Garcia III and Ernest Garcia II's Motion to Dismiss ("Defs.' Opening Br.") at 16; *see*, *e.g.*, *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 647 (D. Del. 2006) (noting that "such a limited activity" is insufficient to establish personal jurisdiction).

[32] Defs.' Opening Br. at 16; *see Outokumpu Eng'g Enters., Inc. v. Kvaerner Enviropower, Inc.*, 685 A.2d 724, 731 ("Mere ownership of a Delaware subsidiary will not support the minimum contacts' requirement of due process.").

[33] *Pilgrim's Pride*, 2019 WL 1224556, at *15 ("This holding is limited to the facts of this case.").

[34] *Id.*

a less substantial presence on the corporation's board, or if the controller only was alleged to wield effective control rather than possessing hard, mathematical control."[35]

The limiting language of *Pilgrim's Pride* does not affect the outcome of this decision. The fact that *Pilgrim's Pride* did not reach those issues does not foreshadow how they would turn out. Nor are any of the open questions present in this case. The *Pilgrim's Pride* court identified two situations in which the controller had less involvement in the adoption of the forum provision and less ability to remove it. In those settings, the inference for implicit consent is weaker. In this setting, the basis for inferring consent is stronger. In *Pilgrim's Pride*, the controller inferably acted through director appointees and accepted the bylaw by not removing it. Here, Garcia Senior approved it by executing a written consent. Garcia Senior's direct involvement in the Forum Provision's adoption makes this a stronger case for implicit consent, not a weaker one.

## III. CONCLUSION

For the foregoing reasons, Garcia Senior's motion to dismiss for lack of personal jurisdiction is denied. For the same reasons set forth in the June 30, 2022 Memorandum Opinion, Garcia Senior's motion to dismiss under Rule 12(b)(6) and Rule 23.1 are also denied.

---

[35] *Id.*

14